EL PUEBLO, DEMANDANTE Y APELADO, *v.* BLANDFORD, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 2ª., en causa por delito de homicidio involuntario.

No. 870.—Resuelto en marzo 24, 1916.

VIANDANTES—CAMINOS O CARRETERAS.—Un viandante tiene derecho a cualquier parte de un camino o carretera que esté desocupada y generalmente no está obligado a mantener una vigilancia hacia atrás aunque su deber puede variar si ha sido avisado o advertido de la llegada de un vehículo por su espalda.

DISTANCIAS—EXTENSIÓN CALCULADA POR EL LARGO DEL SALÓN DE UNA CORTE—DUDA EN CONTRA DEL ACUSADO.—Cuando al declarar un testigo sobre la distancia en que paró un automóvil después de un accidente manifiesta que esa distancia era mayor o igual que la extensión que tenía el salón donde declaraba, la corte inferior podía calcular la distancia, y si la exposición del caso no muestra la extensión del salón, cualquier duda que pueda haber está en contra del acusado.

NEGLIGENCIA—GRADO DE NEGLIGENCIA—INSTRUCCIONES AL JURADO.—En casos de negligencia criminal, la cuestión relativa al grado de negligencia, generalmente queda sometida al jurado mediante las debidas instrucciones de la corte.

NEGLIGENCIA—CAUSA PRÓXIMA.—El hecho de que los casos posibles de negligencia se multipliquen no exime al gobierno de tener que demostrar la causa próxima del accidente.

HOMICIDIO INVOLUNTARIO—CONDUCTORES—VIANDANTES—NEGLIGENCIA FLAGRANTE—DEBIDO CUIDADO Y CIRCUNSPECCIÓN.—De acuerdo con las autoridades cualquier conductor de un vehículo que trate de pasar delante de los viandantes en una carretera a gran velocidad y sin estar seguro de que dichos viandantes tienen conocimiento de la llegada de la máquina, es culpable de negligencia flagrante. El procede sin el debido cuidado y circunspección. Cuando ocurre una muerte, guiar sin miramiento alguno siempre ha sido castigado por la ley de homicidio.

ID.—RESPONSABILIDAD—CONSECUENCIAS NATURALES.—La ley de homicidio hace responsable a un acusado de las consecuencias necesarias y probables de sus actos.

NUEVO JUICIO—NUEVAS PRUEBAS—DILIGENCIA RAZONABLE.—Cuando a los efectos de una moción de nuevo juicio la declaración que se deseaba presentar es una

de las que el acusado estaba obligado a conocer de antemano, no puede con-
siderarse como prueba descubierta nuevamente que el acusado no pudo haber
conseguido mediante diligencia razonable.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. M. Rodríguez Serra.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tri-
bunal.

La carretera de Puerto Rico, el camino que conduce de San
Juan a su barrio principal de Santurce, no tiene aceras.
Puede encontrarse llena de vehículos a cualquier hora del día,
todos los cuales tienen igual derecho al camino y cada uno
de los mismos debe respetar los derechos de los demás. Los
viandantes tienen derecho a cualquier parte del camino que
esté desocupada. *Luther* v. *State,* 98 N. E. 640, y autorida-
des agrupadas en el mismo; *Hennessey* v. *Taylor,* 189 Mass.
583, 3 L. R. A. (N. S.) 345; Código Civil, sec. 327 y siguientes;
*Escriche, Diccionario de Legislación, Tomo Segundo,* página
157 y siguientes; *Riepe* v. *Elting,* 48 A. S. R. 361, y notas;
*Avegno* v. *Hart,* 25 La. Ann. 235, 13 A. R. 133, y nota. Dichos
viandantes generalmente no están obligados a mantener una
vigilancia hacia atrás, aunque sus deberes pueden variar si
han sido avisados o advertidos de la llegada de un vehículo
por detrás de los mismos. *Hennessey* v. *Taylor, supra;
Graham* v. *Evening Press Co.,* 135 Mich. 303; 37 Cyc. 273.

Hubo prueba en este caso tendente a demostrar que en
23 de diciembre, 1912, Pablo de Jesús, Acacio Villanueva, que
llevaba de la mano a un niño, y Francisco Pastrana, entraron
en la carretera por su parte norte con intención de ir hacia
el este de la misma y finalmente cruzar para coger el camino de
Covadonga que está al Sur. Se encontraban en la carretera en
algún punto entre la escuela y el edificio de la "Asociación
Cristiana de Jóvenes," no apareciendo claramente determi-
nado el sitio por la prueba. Aparentemente ellos no habían
llegado a la vía del tren que atraviesa la carretera un poco
hacia el oeste del último edificio. Caminaban por el lado norte

de la carretera en línea recta estando Pastrana en el extremo
izquierdo,Villanueva en el medio, y de Jesús a la derecha, pero
yendo todos por el lado izquierdo de la carretera, quedando
amplio espacio a la derecha.   Joseph J. Blandford y su her-
mano salían de San Juan en un automóvil.  Llegaron donde
estaba este grupo de hombres y el apelante que guiaba la má-
quina los vió desde antes.   No tocó su bocina o dió algún otro
aviso, por lo menos no lo hizo hasta que ya era demasiado
tarde para los viandantes en esta emergencia resolver qué
dirección mejor debían tomar.   Estaban aterrorizados por la
súbita llegada de la máquina por sus espaldas, acompañado
esto de un toque de la bocina del Klaxon, y saltaron impulsa-
dos por el pánico.   De Jesús y Villanueva trataron de atra-
vesar hacia la derecha donde de Jesús llegó sin ninguna nove-
dad, pero Villanueva fué cogido y muerto por la máquina.
De Jesús manifestó que el automóvil iba a mucha velocidad,
que paró inmediatamente, pero a una distancia bastante reti-
rada.   Dijo que la distancia era mayor que la extensión que
tenía el salón de la corte donde declaraba, distancia que pode-
mos seguramente suponer que es de cuarenta a cincuenta pies.
La corte inferior podía calcular esta distancia y cualquier
duda que pueda haber en este sentido, en este tribunal, debe
estar en contra del acusado, pues la exposición del caso no
muestra la extensión del salón.   Otro testigo del Gobierno
declaró que la velocidad era moderada.   El apelante dijo que
paró su máquina dentro de una distancia igual al largo de su
máquina y que iba a razón de ocho o diez millas por hora.
Declaró acerca del pánico que produjo su llegada y la teoría
que tiene del caso es que. no hubiera ocurrido el accidente si
a última hora no hubiera tocado la bocina del Klaxon para
avisar a un carro que iba delante de él.   Creyó que fué el tocar
la bocina lo que hizo saltar a los hombres, y en verdad que el
Fiscal basa enteramente su teoría de negligencia en el toque
inesperado de la bocina.   Si hubiera ido el acusado a una ve-
locidad moderada, como sostiene, el tocar la bocina en la for-

ma. acostumbrada para abrirse paso apenas si constituiría negligencia que lleve consigo responsabilidad criminal.

En casos de negligencia, civil o criminal, la cuestión relativa al grado de negligencia generalmente queda sometida al jurado mediante las debidas instrucciones de la corte. Este caso fué juzgado por la corte sin jurado. No existen instrucciones en los autos y aparentemente ninguna fué solicitada, de modo que no tenemos idea alguna del fundamento en particular por el cual fué declarado culpable el acusado y condenado a tres. meses de prisión. No existe ninguna opinión. De conformidad con las numerosas decisiones de este tribunal tiene que subsistir la sentencia a falta de prejuicio, u otro elemento semejante, si hay prueba suficiente tendente a justificar la condena. *El Pueblo* v. *Sutton,* 17 D. P. R. 345, caso que fué juzgado por la corte sin jurado, y autoridades que en el mismo se citan.

Dejamos enteramente a un lado las indicaciones que surgen de la prueba de que el apelante no iba prestando atención puesto que iba hablando con su hermano y que ambos estaban muy interesados en la carga de alfajías que llevaban en la parte de atrás del carro. No existe prueba de que el accidente ocurrió por falta de atención al camino. El multiplicar los casos de posible negligencia no exime al Gobierno de tener que demostrar una causa próxima. Nos sentimos obligados, sin embargo, a confirmar la sentencia por otros fundamentos.

La corte estuvo justificada en deducir de la prueba que el apelante corría a una velocidad grande y peligrosa. Hay poca o ninguna prueba directa respecto al grado de velocidad, pero la declaración de de Jesús, el pánico producido y la distancia a que el apelante paró su máquina después del accidente, todos eran elementos que en unión quizás con los gestos de los testigos, podían llevar a la corte a inferir que el apelante viajaba rápidamente por la carretera. No discutiremos ahora a qué velocidad debe viajar un automóvil, o cuándo es que el acto de viajar en violación de las leyes insulares y reglamentos constituye *prima facie* prueba de negligencia.

Los casos de homicidio que han sido publicados, debidos a guiar negligentemente un automóvil, no son numerosos. Haremos referencia a algunos de los mismos. *State of Connecticut* v. *Goetz,* 83 Conn. 437, 30 L. R. A. (N. S.) 458, fué un caso en el cual el acusado bajaba una cuesta a unas veinte millas por hora. Vió a dos mujeres paradas en el camino y en la creencia de que esperaban un carro público que acababa él de ver pasar trató de pasarles sin reducir su velocidad. Las dos mujeres alarmadas y confundidas por el carro que rápidamente se acercaba y los cambios de luces delanteras, trataron de cruzar la vía. El acusado desvió rápidamente su máquina para evitar tropezar con ellas a pesar de lo cual tropezó y mató a una. La corte resolvió que la conducta del acusado al guiar tan negligente y rápidamente su carro constituía una verdadera desatención de los derechos de la gente en las calles, habiendo sido declarado culpable el acusado por un delito de homicidio.

*State* v. *Campbell,* 74 Atl. 927, fué otro caso en que un acusado trató de pasar delante de una persona en el camino sin reducir su velocidad. La corte en ese caso hizo referencia a la ley general según la cual la negligencia de la persona perjudicada no establece diferencia. Existían algunos estatutos locales regulando la velocidad en ambos de estos casos de Connecticut, pero en tanto estos estatutos afectaban a los casos en particular eran solamente expresivos de la ley general. Véanse también los casos de *People* v. *Barnes,* 148 N. W. 400; *People* v. *Scanlon,* 132 App. Dec. 528; *State* v. *Setsor,* 119 Pac. 346. *State* v. *Wagner,* 86 Atl. 147, fué un caso en que la velocidad que llevaba el conductor de una máquina produjo un pánico en el conductor de un carro que en cambio mató a uno que iba a pie, habiendo resuelto la corte que el acusado era responsable criminalmente.

En Puerto Rico también tenemos un estatuto local que fija el grado de velocidad y creemos que aparece claro de la prueba que el acusado se excedió de este grado de velocidad. Sin embargo, no queremos que se entienda que sostenemos el criterio

de que la simple infracción de un estatuto que regula la velocidad constituye por sí negligencia criminal.

El artículo 203 del Código Penal prescribe lo siguiente:

"Homicidio es dar muerte ilegal a un ser humano sin que medie malicia. Es de dos clases:

"1. Voluntario: cuando ocurre en ocasión de una súbita pendencia o arrebato de cólera.

"2. Involuntario: cuando ocurre al realizarse un acto ilegal, que no constituyere delito grave (*felony*); o al realizarse un acto legal que pudiere ocasionar muerte en forma ilegal, o sin la debida prudencia o circunspección."

De acuerdo con las autoridades nos sentimos obligados a declarar que cualquiera que trate de pasar delante de los viandantes en la carretera a gran velocidad y sin estar seguro de que dichos viandantes tienen conocimiento de la llegada de la máquina, es culpable de negligencia flagrante. El procede sin el debido cuidado y circunspección. Cuando ocurre una muerte, el guiar sin miramiento alguno siempre ha sido castigado por la ley de homicidio.

Como hemos visto, la corte tenía derecho a inferir que el apelante guiaba a una velocidad peligrosa, peligrosa por pasar delante de los viandantes que no han sido avisados y pueden ser alarmados. El sonar la bocina fué simplemente la cosa en particular que hizo desviar a los viandantes del curso que llevaban, pero un vehículo que se acerca, algún movimiento o distracción entre los mismos, o cualquiera otra razón pudo asimismo haber hecho que cruzaran ellos repentinamente frente a la máquina. La suposición del acusado parece haber sido la de que por el simple hecho de que él se encontraba bien a la derecha y vió que no había obstáculos en el camino ante él, estaba justificado en pasar a los viandantes a gran velocidad sin más precaución. Esta no es la ley. El conductor de una máquina debe siempre manejarla de tal modo que pueda evitar causar daño a la gente que viaja por la carretera. El no tiene derecho a pasar delante de ellos a una velocidad peligrosa, a menos que esté justificado en creer

que tienen ellos conocimiento de su llegada y estén preparados para dejarle expedito el paso. Cualquier hombre tiene derecho a caminar por la carretera y el conductor de un automóvil que pretenda pasar por delante del mismo debe tener motivos para creer que el viandante tiene conocimiento de la llegada de la máquina, o que ha sido avisado debidamente. Un automóvil puede causar más daño que cualquier otro vehículo en un camino. Tiene derecho a estar allí pero debe respetar los derechos de los demás.

Parece duro que un acusado que iba enteramente sin malicia y que no tenía la intención consciente de hacer daño a nadie en la carretera tenga que sufrir los castigos y penas de la ley criminal, pero la ley de homicidio siempre ha hecho responsable a un acusado por las consecuencias necesarias y probables de sus actos. El hombre que sin miramientos de ningún género usa armas de fuego o cualquier otro agente que pueda ocasionar muerte, sin que importe conocer el motivo que en realidad tiene para usarlos, se presumirá que conocía la consecuencia natural de sus actos. *El Pueblo* v. *Francis,* 19 D. P. R. 692; *Commonwealth* v. *Pierce,* 138 Mass. 178; *Luther* v. *State,* 98 N. E. 642, *supra; J. Aitken* v. *Holyoke St. Ry. Co.,* 184 Mass. 271; *State* v. *Justus,* 8 Pac. 342; *People* v. *Pearne,* 118 Cal. 154, 50 Pac. 376, aunque, desde luego, no queremos que se entienda que sostenemos el criterio de que un automóvil es la misma clase de instrumento peligroso que un arma de fuego.

Damos por sentado que la cuestión principal promovida en este caso fué la consideración de la prueba por la corte inferior. El apelante, no obstante, se quejó de la negativa de la corte a conceder un nuevo juicio. La moción se fundó en el ofrecimiento de presentar nueva prueba consistente en una declaración jurada del hermano del acusado que estaba con él cuando ocurrió el accidente. Sin entrar a considerar todas las razones técnicas para negar esta moción de nuevo juicio debe tenerse como cierto que la declaración que se deseaba presentar era de aquellas que el acusado estaba obligado a

conocer de antemano. La ausencia de su hermano podría haber sido un motivo para obtener una suspensión en la corte inferior en la fecha del juicio, pero en manera alguna puede considerarse como prueba descubierta nuevamente, que el acusado no pudo haber conseguido mediante razonable diligencia. El acusado estaba obligado a saber o averiguar cuál era la declaración que su hermano podía prestar. Además, hemos examinado el *affidavit* y nada encontramos en el mismo que pudiera afectar a la sentencia de la corte inferior. La corte consideró debidamente la moción de nuevo juicio que fué denegada.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.