RAMIRO RIVERA GONZÁLEZ, demandante y apelado, *v.* JOSÉ VAHAMONDE, demandado y apelante.

Núm. 8148.—*Sometido:* Noviembre 13, 1940. *Resuelto:* Diciembre 20, 1940.

*Harry F. Besosa,* abogado del apelante; *A. Quirós Méndez* y *Fernando B. Fornaris,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Este es un pleito sobre daños y perjuicios sufridos como consecuencia de un accidente de automóvil en el que se reclamaron cinco mil dólares y las costas y honorarios de abogado y se concedieron mil quinientos con las costas, sin honorarios.

No conforme el demandado, apeló. Señala cuatro errores como cometidos por la corte al negar su solicitud de un pliego de particulares, al actuar sin jurisdicción, al dar crédito a testigos falsos y al apreciar la prueba.

■ Examinemos el primero. Para ello y también para el estudio del segundo precisa conocer la demanda. Alegóse en ella que el demandante es mayor de edad, casado, comerciante y vecino de Río Grande, P. R.; que el demandado era dueño el 10 de mayo de 1938 del *truck* H–1013, dedicado a empresa de transporte de carga por los caminos públicos de la Isla; que el demandante con anterioridad a esa fecha era hombre fuerte, sano, dedicado al comercio del que derivaba ganancias substanciales; que el expresado día el indicado truck, manejado negligentemente por Juan Maldonado, chófer al servicio del demandado que actuaba dentro de las atribuciones de su empleo, caminaba por la carretera que del Yunque conduce a Río Grande y ocasionó al demandante las contusiones que especifica, viéndose obligado a ingresar en un hospital y a dejar de dedicarse a sus ocupaciones habituales, debiéndose el accidente exclusivamente a la negligencia del chófer consistente en no haber tenido en cuenta el ancho y tráfico de la carretera, en caminar a velocidad excesiva, en tener los frenos desajustados y en no tomar las debidas precauciones para garantizar la seguridad de las personas que transitaban.

Y seguidamente alega:

"Que como consecuencia y resultado del accidente ameritado, el demandante ha sufrido daños y perjuicios que estima en la suma de Cinco Mil Dólares ($5,000) consistentes dichos daños y per-

juicios en sufrimientos físicos y morales del demandante, las lesiones recibidas, los gastos en que ha incurrido con motivo del tiempo que ha dejado de trabajar y de atender a sus negocios.

"Que el demandado ni ninguna otra persona a su nombre ha satisfecho al demandante los daños y perjuicios causados."

Emplazado el demandado presentó a la corte un escrito titulado *"Bill of Particulars"* que contiene la siguiente petición:

"Requiere el demandado que se detallen específicamente los daños que alega sufrió el demandante ascendente a Cinco Mil Dólares ($5,000) para poder el demandado preparar y presentar su defensa de acuerdo con el derecho que le concede la ley.

"Se previene al demandante por medio de sus abogados que de no entregar al demandado los detalles solicitados dentro del período de diez días, quedará imposibilitado de presentar prueba en apoyo de los mismos, todo lo cual es de acuerdo con el artículo 124 de nuestro Código de Enjuiciamiento Civil."

El demandante no proporcionó voluntariamente los particulares solicitados y vista la moción ante la corte ésta la declaró sin lugar.

Examinada la demanda, no creemos que pueda sostenerse que la corte abusara de su discreción al actuar en la forma en que lo hizo, único caso en que procedería la revocación de la sentencia por el motivo indicado en un pleito de esta naturaleza.

Expresamente invocó el apelante en su moción el artículo 124 del Código de Enjuiciamiento Civil, que prescribe:

"En las alegaciones no es necesario que la parte que alegue la existencia de alguna cuenta, detalle las partidas de ésta, pero deberá entregar a la parte contraria, dentro de los diez días de haberla pedido por escrito, una copia de dicha cuenta, requisito sin el cual quedará imposibilitada de presentar prueba en apoyo de la misma. La corte o juez podrá disponer la presentación de otra cuenta además de la presentada, si ésta fuera demasiado general o resultare defectuosa en alguno de sus particulares."

Como puede verse, el artículo se refiere expresamente al caso en que se alegue la existencia de alguna cuenta y aunque

es cierto que el principio se ha extendido a otras acciones, como la de daños y perjuicios, por ejemplo, se ha considerado que su aplicación descansa entonces en la sana discreción de la corte.

El artículo es igual al 454 del Código de Enjuiciamiento Civil de California y su propósito se expone como sigue en 1 Cal. Jur. 159:

"El propósito del artículo 454 del Código de Enjuiciamiento Civil al requerir a una parte que entregue a la parte contraria, dentro de cinco días de haberla pedido, una copia de una cuenta objeto de la acción quedando, de no hacerlo, imposibilitada de presentar prueba en apoyo de la misma, es proteger a la parte oponente contra dificultades durante el juicio, permitiéndole requerir y obtener por adelantado una relación detallada de las partidas cargadas a su cuenta."

Y refiriéndose a la materia en general dice Ruling Case Law:

"El pliego de particulares se considera en ciertos respectos como una ampliación del documento; y su objeto es informar al demandado de la reclamación contra la cual habrá de defenderse. A fin de realizar su objeto debe ser tan específico y suministrar tanta información como un documento especial; y lo mismo puede decirse con respecto a las materias especiales de defensa. Sin embargo, la causa de acción o la defensa debe exponerse en las alegaciones y no en un pliego de particulares; y no es propio alegar en tal pliego materia de evidencia. Una relación de hechos, debidamente redactada y radicada en apoyo de un documento debe considerarse como parte del mismo; y por tanto es buena práctica determinar por medio de excepción previa la suficiencia de la causa de acción alegada en tal relación de hechos y alegación. En acciones en cobro de dinero consistentes en varias partidas, un pliego de particulares especificando las fechas y describiendo las transacciones de las cuales se alega surge la deuda, se concede casi como cosa corriente. Pero es erróneo suponer que los pliegos de particulares se limitan a acciones que envuelven cuentas o acciones en cobro de dinero provenientes de un contrato. Pueden propiamente concederse en toda clase de acciones en que las circunstancias concurrentes sean tales que la justicia requiera una minuciosidad mayor que la requerida de ordi-

nario bajo las reglas de procedimiento. Usualmente su concesión o negativa descansa en la discreción de la corte sentenciadora, y en consonancia con la regla ordinaria en cuestiones de naturaleza discrecional, la orden de la corte sentenciadora a ese respecto no será revocada en apelación a menos que haya habido un manifiesto abuso de tal discreción. Sin embargo, no se concederán pliegos de particulares cuando el caso se halla expuesto en la alegación con amplitud suficiente para informar al demandado de su naturaleza; o cuando la reclamación es una y simple en su índole.'' 21 R.C.L. 480.

En un caso en que se trataba de una acción sobre cuenta corriente y por tanto de la aplicación estricta del estatuto, esta corte, por medio de su Juez Asociado Sr. Hutchison, se expresó como sigue:

''El apelado también insiste en que la corte de distrito ejerció su discreción al considerar la moción, y que no debe alterarse el resultado en este recurso. Puede dudarse seriamente que la corte de distrito tenga discreción alguna en torno a materias claramente comprendidas en el estatuto. I Bancroft's Code Pleading, 703, pár. 488. De todos modos, 'donde los estatutos relativos a pliegos de particulares se interpretan en el sentido de investir a los tribunales de facultades liberales al ordenarlos, esos pliegos deben ser liberalmente concedidos, a menos que sean claramente inútiles, y se soliciten con el mero propósito de molestar.' 49 C. J. 626, pár. 887. También hay autoridad para decir que 'puede revisarse la resolución cuando es claramente errónea; y la discreción del tribunal sentenciador respecto de la suficiencia del pliego de particulares que se radica con motivo de la moción es una discreción judicial que puede ser revisada.' 4 C. J. 801, pár. 2759. El caso de *Molina* v. *Rodríguez,* 40 D.P.R. 690, que sirve de apoyo al apelado, no es de estricta aplicación al presente.'' *Berio* v. *Rivera,* 42 D.P.R. 460, 462.

Por último, si alguna duda pudiera existir con respecto a perjuicios que hubiera podido sufrir el demandado por no habérsele proporcionado los medios de defenderse en debida forma, dados los términos en que aparece redactada la demanda, esa duda desaparecería a virtud de la acción final tomada por la corte denegando la reclamación de daños y perjuicios por gastos y pérdidas y limitándose a concederlos

por las lesiones recibidas y los sufrimientos físicos y morales alegados y demostrados.

Tampoco existe el segundo de los errores señalados. Por él se sostiene que no alegándose en la demanda el distrito judicial dentro del cual ocurriera el accidente, la Corte de Distrito de San Juan ante la cual se presentó carecía de jurisdicción para conocer del pleito. La cuestión se suscitó en la corte de distrito por medio de un escrito titulado "Excepción previa" que contiene dos, la primera "que la demanda no aduce hechos suficientes para determinar una causa de acción" y la segunda que "la corte no tiene jurisdicción sobre la persona del demandado ni por la materia de la acción", que fué declarado por la corte sin lugar, archivando entonces el demandado su contestación.

Aunque la demanda pudo ser más específica y debió serlo de acuerdo con la mejor práctica, es lo cierto que en ella se encuentran datos suficientes determinantes de la jurisdicción y competencia de la corte para actuar. La Corte de Distrito de San Juan al igual que las del resto de la Isla es una corte de jurisdicción general, teniéndola para conocer de acciones de la naturaleza de la ejercitada en este pleito. El accidente se alega que ocurrió en la carretera que del Yunque conduce a Río Grande, pueblo éste comprendido dentro del distrito judicial de San Juan, Puerto Rico. Y el demandado se sometió a la jurisdicción de la corte al hacer ante ella una comparecencia general como la que hizo.

Los errores tercero y cuarto se señalan como sigue:

"3. Erró (la corte) manifiestamente al dar valor probatorio a las declaraciones de testigos que premeditada, maliciosa y descaradamente declararon falsedades y en la apreciación y aquilatación de la prueba y además ejerció parcialidad y prejuicio en contra del demandado, no dando valor alguno a las declaraciones de los testigos de éste, condenándole al pago de costas cuando la sentencia dictada es menor que la cantidad reclamada, y arbitrariamente valorando los daños en $1,500.

"4. Erró al dictar sentencia contraria a la prueba presentada."

Conocemos la teoría del demandante expuesta en su demanda. El demandado contestó admitiendo la propiedad del truck y el negocio que realizaba con el mismo y alegó que guiado dicho truck por su chófer Maldonado, caminaba vacío por la carretera que de Río Grande conduce a Luquillo y al doblar a la derecha para tomar la carretera que va al Yunque a poca velocidad y tocando el claxon, cruzaba negligentemente el demandante con una caja al hombro que le impedía ver y al oír el claxon se paró y repentinamente se lanzó contra el guardalodo, cayendo y causándose contusiones leves en la pierna izquierda y en el codo, debiéndose lo ocurrido a la sola negligencia del demandante.

Fué el pleito a juicio, practicándose una larga prueba contradictoria que fué apreciada por el juez sentenciador, así:

"Hemos considerado cuidadosamente la evidencia de ambas partes. Por el resultado de la misma declaramos probado que en día, hora y lugar a que se refieren las alegaciones, el demandado tenía su *truck* destinado al transporte de cañas, aunque en ese momento iba descargado, y estando guiado como chófer por su empleado Juan Maldonado Vega en funciones del empleo; que el demandante Ramiro Rivera González cruzaba a paso natural de la tienda de Felipe Maldonado a la de Suárez Hermanos, donde él trabajaba, y cuyos establecimientos quedan precisamente en las esquinas opuestas a la derecha y a la izquierda, respectivamente, entrando de la carretera del Yunque, llevando el demandante una caja de cartón con unos dulces sobre el hombro derecho y sostenida dicha caja con la mano de ese lado; que cuando el demandante se encontraba ya en el lado izquierdo de la carretera, fuera del firme de la misma, y como a tres pies de la pared del establecimiento, el truck del demandado, guiado por su chófer, dobló la esquina o curva a bastante velocidad, tomándola muy abierta hacia el lado izquierdo del camino, en vez del lado derecho, alcanzando al demandante con el guardalodo izquierdo delantero, arrastrándolo como a unas cuatro yardas, y yendo el vehículo a parar como a veinte pies de distancia del sitio del accidente.

"La evidencia (es) contradictoria con respecto a si el chófer al doblar la curva tocó *claxon* o aparato de alarma avisando su aproximación. Declaramos que no dió aviso alguno al doblar la curva y aceptando que lo diera al enfrentarse con el demandante, de su

propio testimonio aparece que fué muy tardío e ineficaz, pues dice que lo dió como a dos pies de distancia, cuando estaba ya muy cerca del demandante, que lejos de producir el efecto deseado y exigido por la ley, causó susto y confusión al demandante.

"En la contestación se alega que el demandante llevaba la caja en el hombro izquierdo, que le tapaba la cabeza y le impedía ver, pero declaramos probado, por el resultado de la evidencia, que la caja con los dulces la llevaba el demandante sobre el hombro derecho, sin que tuviera obstáculo alguno por el lado izquierdo y que si el accidente ocurrió fué debido no a negligencia alguna del demandante y sí a que el chófer tomó la curva muy abierta por el lado izquierdo, dando aviso con el claxon cuando ya era ineficaz, y principalmente a que los frenos del vehículo no estaban en buenas condiciones de funcionamiento.

"Es cierto que Eugenio Méndez declaró que Blas Rivera Méndez y el policía insular, Fidel Rodríguez, cogieron el truck y lo echaron a andar para probarlo y que Pablo Suárez declaró que fué Juan Maldonado, el propio chófer del truck, quien lo probó con el policía para demostrar si los frenos estaban o no bien. Pero sea quien fuere el que guió el truck para conocer el verdadero estado de sus frenos, es lo cierto que el policía Rodríguez también declaró, traído como testigo del demandado, que la operación de la prueba de los frenos se hizo por Juan Escobar, que era un chófer autorizado, y que el truck no pudo parar inmediatamente como debía hacerlo al aplicarle los frenos, de hallarse éstos en buenas condiciones, y que entonces le preguntó al chófer Juan Maldonado, por qué guiaba el carro, si los frenos estaban flojos, contestándole él había cogido el truck en buenas condiciones pero eso se debía a que había tenido que pasar el río y los frenos se habían aflojado. El policía Rodríguez, persona sin interés alguno en el asunto, ha merecido entero crédito a la corte. Fuera porque los frenos estaban desajustados o porque se hallaban mojados, es lo cierto que no estaban en buen estado de funcionamiento y cuando el chófer los aplicó no respondieron.

"Véase la jurisprudencia establecida en los casos de *El Pueblo* v. *Blanford*, 23 D.P.R. 625, 627; *Ramos* v. *Sucn. de Salvador Nadal*, 29 D.P.R. 587; *Portalatín* v. *Noriega*, 33 D.P.R. 790; y *Cortijo* v. *Domínguez*, 36 D.P.R. 936, 939.

"La evidencia demuestra que el demandante después de ser arrollado por el vehículo del demandado, fué llevado en estado de *shock* a la Clínica Pereira Leal, de Río Piedras, siendo atendido por

el Dr. Miguel Alonso, y que presentaba diferentes contusiones y lesiones· en el cuerpo, o sea en la región pretibìal de la pierna izquierda en su tercio medio, en el bajo vientre, en los muslos, en el tórax anterior, y una fractura del brazo izquierdo. Se le tomaron radiografías. Estuvo recluído veintiséis días en la Clínica. Después asistió a ella semanalmente durante un período de dos y medio a tres meses en que el brazo estuvo enyesado. El carácter general de las lesiones y fracturas eran dolorosas de por sí. El perito médico declaró que la condición física del paciente en las funciones del brazo izquierdo no eran normales, teniendo una incapacidad parcial permanente que le imposibilita para el trabajo, porque no podía extender por completo el brazo, existiendo cierto grado de angulación.

"El demandante reclama en la demanda, además de los daños y perjuicios por las lesiones y sufrimientos físicos y morales producidos por las mismas, los gastos incurridos y las pérdidas ocasionadas por el tiempo que ha dejado de trabajar y de atender su negocio. Parece que el demandante estima que habiéndose admitido el hecho de la demanda donde alega que los demandados ni ninguna otra persona habían satisfecho los daños y perjuicios causados, quedó admitido que éstos montaban a cinco mil dólares ($5,000) pero ello no es así, pues es en la alegación sexta donde se alegan los daños y su valor, hecho que ha sido negado. Y sobre esos extremos de los daños se presentó evidencia testifical tendiente a demostrar que el demandante era empleado en el establecimiento de Flores Hermanos, donde tenía un sueldo de $40 mensuales, más un 25% del beneficio líquido, que era de $300 mensuales, o sea de $75 (*sic*). Los dueños del establecimiento Suárez Hermanos, son Juan Suárez y Víctor Rodríguez. . . . . . . Requeridos . . . para presentar los libros de contabilidad de su negocio y la cuenta de Ramiro Rivera, así como a éste para producir la libreta que dijo tenía donde anotaba las cantidades recibidas, dicho Juan Suárez sólo trajo una libreta donde meramente tenía algunos nombres y números en desorden, sin que ella demuestre el debe y haber, ni el volumen de negocios, y manifestando Ramiro Rivera que no había traído la libreta suya porque ya no la tenía, pues había desaparecido. La evidencia es claramente demasiado general e insuficiente para declarar de modo positivo y concreto cuáles fueran los gastos en que incurriera el demandante con motivo del accidente y las pérdidas sufridas por el tiempo dejado de trabajar y de atender a su empleo o negocio. Véase *García* v. *Fernández*, 52 D.P.R. 183.

"Debe concederse indemnización (mil quinientos dólares) por las lesiones recibidas y los sufrimientos físicos y morales como consecuencia de las mismas y denegarse por los demás daños reclamados.

". . . no debe . . . concederse honorarios de abogado . . . Las costas se imponen por disposición de la ley."

Examinado el caso en su totalidad, nos parece que el apelante fué demasiado lejos en la formulación de su tercer error. No demostró lo que afirma. Quizá tenga razón, pero no encontramos en los autos base para sustituir el juicio que formara el juez sentenciador en la apreciación de los hechos ni en la fijación de la indemnización. Los errores no fueron cometidos.

*La sentencia debe confirmarse.*