PORTALATÍN, DEMANDANTE Y APELADO, *v.* NORIEGA, DEMANDADO
Y APELANTE.

No. 3184.—*Visto:* Abril 25, 1924.  *Resuelto:* Noviembre 25, 1924.

DAÑOS Y PERJUICIOS—NEGLIGENCIA DE MENORES DE 18 AÑOS—DILIGENCIA DE UN
BUEN PADRE DE FAMILIA.—Cuando se demanda al padre para que indemnice
los daños y perjuicios causados por negligencia de su hijo menor de 18 años
en la conducción de un automóvil, la defensa de que el padre empleó toda
la diligencia de un buen padre de familia debe referirse a los hechos que
ocasionaran el daño y no se prueba con la mera evidencia de que el padre

hizo asistir a su hijo a escuelas o universidades, o que el menor había sido autorizado por el Gobierno, mediante examen, para manejar vehículos de motor.

ID.—ID.—CAUSA DE ACCIÓN CONTRA EL PADRE—PARTE DEMANDADA.—El padre de un menor de 18 años que causó daños por negligencia en el manejo de un automóvil no deja de ser responsable por el hecho de que el accidente ocurrió mientras el hijo actuaba como empleado de otra persona. Esta o el padre, a elección del perjudicado, son responsables, de acuerdo con el artículo 1804, inciso 4°., del Código Civil.

ID.— ID.— NEGLIGENCIA CONTRIBUTORIA— DEMANDANTE TUERTO. — A una persona que sin su culpa se ve colocada en una situación de inminente peligro, no puede exigírsele el mismo grado de cuidado y circunspección que ejercería una persona prudente cuando no está frente a un peligro inmediato. Tal persona, como cuestión de derecho, no es culpable de negligencia contributoria, por el hecho de no haber actuado en la forma más juiciosa ante los distintos riesgos que corrió, o por razón de haber podido escapar si hubiera actuado de distinta manera, y menos cuando tal persona no veía por un ojo. La cuestión en tales casos no es averiguar lo que hubiera hecho una persona cuidadosa bajo circunstancias ordinarias o normales, sino lo que hubiera hecho o lo que se hubiera podido esperar que hiciera en presencia de tal peligro.

ID.—ID.—Un conductor que camina a gran velocidad por una carretera donde ve que transitan peatones no deja de ser negligente por el hecho de que haga uso de la bocina y menos cuando el aviso es dado tan cerca de los viandantes que más bien puede producir el pánico entre ellos.

ID.—ID.—El deber de que un automóvil quede bajo un control razonable implica naturalmente que el conductor ejercitará el poder de dominio siempre que sea razonablemente necesario para evitar ocasionar daños a otras personas. Si un viandante cruza su camino tan cerca del vehículo que puede ocurrir una colisión, la velocidad del carro debe ser reducida. Además, las circunstancias pueden ser tales como cuando es inminente una colisión que el cuidado razonable en el manejo del vehículo requiera que se pare. El conductor de un automóvil no cumple necesariamente con su deber marchando muy despacio, sino que debe parar el vehículo si es necesario para evitar causar un daño a un viandante.

SENTENCIA de *R. Díaz Cintrón*, J. (Ponce), declarando con lugar la demanda, con costas. *Confirmada.*

*F. B. Fornaris*, abogado del apelante; *D. Sepúlveda*, abogado del apelado.

EL JUEZ ASOCIADO SEÑOR FRANCO SOTO, emitió la opinión del tribunal.

El 30 de abril de 1922, en la carretera que conduce de Ponce a Santa Isabel, Jenaro Noriega y Pattern, menor de 18 años de edad, quien guiaba como conductor un automóvil marca "Buick," arrolló al demandante José Portalatín

infiriéndole lesiones de gravedad, entre ellas las fracturas del húmero del brazo izquierdo y del fémur y tibia de la pierna izquierda.

Fundándose en estos hechos y en lo que dispone el art. 1804 del Código Civil Revisado, el demandante dirigió su acción de daños y perjuicios directamente contra el padre del menor, Cándido Noriega y González, alegando que dicho menor es hijo legítimo del demandado, que estaba bajo su patria potestad, no había sido emancipado y vivía en su compañía, y que el accidente ocurrió única y exclusivamente por inexperiencia, descuido y negligencia del conductor del auto, Jenaro Noriega y Pattern, quien no usó de la debida prudencia y circunspección en el manejo del mencionado automóvil, conduciéndolo a gran velocidad y sin tocar bocina ni ningún instrumento de aviso.

El demandado contestó la demanda imputando el accidente exclusivamente a la culpa y negligencia del propio demandante, y alegó además como defensa: 1º, que el demandado empleó toda la diligencia de un buen padre de familia para prevenir el daño, y 2º, que en el momento del accidente Jenaro Noriega y Pattern era un empleado de la casa de Noriega y Alvarez, Sucesores, y guiaba un automóvil propiedad de dicha casa comercial en gestiones de la misma, acompañado de otro empleado y uno de sus gestores.

Celebrado el juicio, la corte inferior dictó sentencia condenando al demandado a indemnizar al demandante la suma de $1,150 y costas. No conforme el demandado interpuso esta apelación y en su alegato señala la comisión de cuatro errores. Los dos primeros se refieren a las defensas especiales que el demandado utilizó en su contestación y los restantes tratan de la apreciación que de la prueba hizo la corte inferior.

Sostiene el apelante que habiendo demostrado ser un diligente y buen padre de familia, la corte inferior cometió error al interpretar los artículos 1803 y 1804 del Código Civil Revisado haciéndole responsable de los actos de su hijo

menor de edad con motivo del accidente. Como base de esta contención se alega el cuidado y vigilancia que el apelante tuvo con su hijo haciéndole asistir a las escuelas públicas de primera y segunda enseñanza y luego haciendo su ingreso en colegios del continente americano para estudiar una carrera. Todo ello, que dicho sea de paso, constituye el deber elemental de todo padre de familia, no es suficiente por sí solo. Por sus propios términos la ley requiere para que cese la responsabilidad que se pruebe que se empleó "toda la diligencia de un buen padre de familia para prevenir el daño." Párrafo final del art. 1804 del Código Civil. Se necesita algo en relación con el daño mismo y las circunstancias que en este caso concurren y que analizaremos en seguida, no demuestran en verdad la diligencia del padre para prevenir el daño.

Se alega además que el apelante no consintió que su hijo manejara vehículos de motor por los caminos públicos hasta tanto el Gobierno de Puerto Rico no lo autorizara para ello y que al efecto sufrió el correspondiente examen y de este modo insiste el apelante que no necesitaba otra cosa para asegurarse que su hijo era hábil para guiar automóviles cuando el estado es el llamado a velar a los que dedicándose a esas ocupaciones puedan constituir un peligro para sus semejantes. A estos razonamientos basta decir que el menor no había cumplido los 18 años de edad, y por ello ocurre todo lo contrario de lo que asume el apelante. El gobierno es quien no hubiera autorizado que dicho menor, no habiendo cumplido los 18 años, guiara vehículos de motor sin el consentimiento por escrito del apelante haciéndose responsable como padre del menor de las infracciones de la ley y por todos los daños que el menor pudiera causar.

La letra "c" del artículo 5 de la ley No. 75 para reglamentar el uso de vehículos de motor, aprobada en abril 13 de 1916 (p. 147), dice lo siguiente:

"(c) No se expedirá licencia a persona menor de diez y seis

años de edad. Se podrá expedir licencia a una persona cuya edad fluctúe entre los diez y seis y diez y ocho años, para manejar su propio automóvil o el de la persona bajo cuya patria potestad se encuentre, siempre que ésta consintiere, mediante escrito presentado al Comisionado del Interior, en hacerse responsable de todas las multas que se impusieren al conductor por cualquier infracción de ésta Ley, y por todos los daños que pueda causar. Fuera de este caso no se expedirá ninguna licencia a personas menores de diez y ocho años.''

Esta provisión de la ley se funda lógicamente en el peligro que siempre puede existir con la expedición de licencias a menores de 18 años para el manejo de vehículos de motor por la falta de un completo discernimiento en sus facultades mentales debido a que en la generalidad de los casos no se ha llegado a la madurez necesaria que solamente se alcanza con los años para obrar de acuerdo con lo que exigen las circunstancias de momento o la más ordinaria prudencia. Y para ser consecuentes, si se pudiera juzgar la debida diligencia de un buen padre de familia por la autorización que da el gobierno al que sufre un examen demostrando su competencia o habilidad en el manejo de automóviles, tal demostración equivaldría a una patente de inmunidad para toda clase de accidente y la consecuencia no podía ser más absurda. Ni el buen sentido ni la ley han permitido semejante proposición.

El caso de *Schultz* v. *Morrison*, 91 Misc. R. 248, 154 N. Y. Suppl. 257, es un caso ilustrativo del fundamento que tuvo el legislador para prohibir el manejo de automóviles a personas menores de 18 años, diciendo:

''El objeto y fin del estatuto es promover la seguridad de aquellos que viajan por los caminos públicos. Aunque un vehículo de motor no debe considerarse en sí mismo como una máquina peligrosa, sin embargo, se convierte en tal si se usa en manos de una persona descuidada y sin experiencia. El estatuto en efecto así lo ha declarado cuando prohibe su funcionamiento a las personas menores de 18 años. Declara en sustancia que tales personas no reúnen el cuidado necesario y juicio para manejar vehículos de

motor en los caminos públicos sin poner en peligro la vida de otras personas.'' Huddy on Automobiles, Fifth Edition, p. 266, nota 17.

Como cuestión de hecho se probó que el menor había sido multado con anterioridad al accidente por exceso de velocidad y que de esto tuvo conocimiento el apelante, quien entonces pudo ejercer la debida diligencia de un buen padre de familia para prevenir ulterior responsabilidad, revocando el permiso que había concedido al hijo para el manejo del auto.

Mediante el segundo error el apelante alega que la corte inferior erró al considerarlo responsable de los daños causados por su menor hijo mientras éste actuaba como empleado de la mercantil Noriega y Alvarez, Sucesores, guiando el automóvil en gestiones de dicha mercantil y desempeñando funciones de su empleo.

La proposición del apelante tiende a establecer que la mercantil ''Noriega y Alvarez, Sucesores,'' es la responsable de los daños causados por el menor y no el apelante. Pero asumiendo como cierta esta defensa, no tendría valor en este caso. Para que fuera eficaz o tuviera efecto legal, tendría que alegarse que la mercantil ''Noriega y Alvarez, Sucesores,'' era la única responsable de los actos del menor en su carácter de empleado. Y no se alega ni tampoco tendría apoyo en la ley. Lo que en verdad quiere significar el apelante es que en virtud de lo que determina el párrafo 4º del artículo 1804 del Código Civil Revisado, sería también responsable la mercantil ''Noriega y Alvarez, Sucesores,'' de los daños causados por el menor, separadamente, de la responsabilidad que al mismo tiempo se impone al padre por el párrafo 2º de dicho artículo, que en lo pertinente dice:

''Art. 1804.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

''El padre y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

\*          \*          \*          \*          \*          \*          \*

"Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en los que tuvieran empleados, o con ocasión de sus funciones."

Se desprende, pues, que si se diera el caso de dos personas responsables con motivo de un accidente como el que nos ocupa, el perjudicado podía incluir en la demanda a todas las personas responsables o elegir una de ellas, separadamente, exigiéndole íntegramente la responsabilidad. Y el demandante al seleccionar al apelante para que indemnice los daños causados por su hijo menor de edad, que vivía en su compañía y estaba bajo su patria potestad, prescindiendo de las relaciones que como empleado tuviera el menor con la mercantil citada, hizo uso de un derecho que le autorizaba la ley.

Los restantes errores comprenden la misma materia, o sea, la apreciación que de la prueba hizo la corte inferior.

La evidencia fué contradictoria y apreciada por el juez sentenciador, decidiendo el conflicto en favor del demandante. Es verdad que el juez inferior no sentó en su opinión las conclusiones de hecho del caso, pero de todos modos aunque admitiéramos la teoría del demandado sosteniendo que el accidente fué debido a que el demandante intentó cruzar la carretera en el momento de acercarse el automóvil, las demás circunstancias del caso demuestran que ese incidente por sí solo no releva de responsabilidad al demandado. Se demostró que el demandante era tuerto desde sus primeros años y que transitaba por la carretera en unión de cuatro personas más al ocurrir el accidente. Estas personas formaban dos grupos: tres caminaban delante y a poca distancia les seguían los otros dos. La prueba, aunque no sin alguna contradicción, tiende a establecer que ambos grupos caminaban hacia la derecha del camino. En el grupo delantero se encontraba el demandante en el lado extremo paralelo al centro de la carretera. Aparece asimismo que

el automóvil caminaba a mucha velocidad y que el conductor no disminuyó la misma al acercarse al grupo de caminantes.  Así se desprende esta última circunstancia del conjunto de la prueba y claramente de la declaración del testigo Ismael Quiñones, testigo del demandado y quien ocupaba el automóvil al tiempo del accidente.  En tales condiciones y sin dar el conductor un razonable aviso por anticipado de la proximidad del automóvil, pues el aviso aparece que fué dado en el mismo instante de tratar el conductor de abrirse paso entre los viandantes y cuyo aviso más bien produjo la excitación y pánico consiguiente en el ánimo de dichas personas, era, pues, evidente que el demandante, a quien le faltaba la vista del ojo izquierdo, fuera colocado frente a una situación de inmediato peligro y era natural inferirse que no pudiera ejercer por su defecto físico la misma habilidad que fué desplegada por sus compañeros, escapando del peligro, ni tampoco exigírsele el mismo grado de cuidado y circunspección que ejercería una persona normal en iguales o parecidas condiciones.

En resumen, lo que con más certeza puede deducirse de las circunstancias concurrentes en este caso es que el defecto físico en la vista del demandante determinó que él no pudiera, al instante, darse exacta cuenta de la situación de peligro en que fué puesto por el conductor del automóvil. El demandante probablemente fué tardío en mirar hacia atrás, ya que si giró a la izquierda para ver la máquina que se acercaba, haciendo uso del ojo derecho, él tuvo que girar sobre sus pies y ponerse casi de frente al automóvil.  La conducta del demandante, por consiguiente, al obrar como lo hizo, intentando cruzar la carretera para escapar del peligro inminente o actuando en forma que no pudo evitarlo, no podemos considerarla como cuestión legal, que envuelva la cuestión de negligencia contributoria por parte del demandante, porque la cuestión no era pensar lo que hubiera hecho una persona prudente en condiciones normales, sino cómo hubiera actuado ante un peligro inmediato.  En rela-

ción con situaciones análogas, en el caso de *González* v. *The Fajardo Development Co.*, 30 D.P.R. 182, se hacen las siguientes citas:

"A una persona que sin su culpa se ve colocada en una situación de inminente peligro, no puede exigírsele el mismo grado de cuidado y circunspección que ejercería una persona prudente cuando no está frente a un peligro inmediato. Tal persona, como cuestión de derecho, no es culpable de negligencia contributoria, por el hecho de no haber actuado en la forma más juiciosa ante los distintos riesgos que corrió, o por razón de haber podido escapar si hubiera actuado de distinta manera. La cuestión en tales casos no es averiguar lo que hubiera hecho una persona cuidadosa bajo circunstancias ordinarias o normales, sino lo que hubiera hecho o lo que se hubiera podido esperar que hiciera en presencia de tal peligro." (Bailey, Personal Injuries, Tomo II, pág. 1461, ed. 2ª.)

"Una persona que es colocada por la negligencia de otra en un sitio de peligro inmediato, y que bajo la influencia de un gran pánico ejecuta un acto que pueda contribuir a que resulte lesionada o muerta, no puede culpársele de negligencia contributoria e impedirle una reclamación." (*Consolidated Traction Company* v. *Scott*, 55 Am. St. Rep. 620.)

Aparte de la situación de peligro inmediato en que la negligencia del conductor del auto colocó al demandante, aparece además que se trataba de un trozo de carretera ancho y recto y en donde el conductor podía ver a distancia y distintamente a las personas que caminaban en aquel sitio, y esto pone de manifiesto claramente que el conductor pudo evitar el accidente disminuyendo la velocidad o deteniendo el carro, pues el aviso que dió tan cerca de los caminantes no era suficiente y fué inútil dada la velocidad del auto. Sería una teoría subversiva sostener como lo hizo el apelante en el acto de la vista, que un conductor o chauffeur no está obligado a detener la velocidad de un automóvil en una carretera pública en ninguna circunstancia en que se encuentra con viandantes. Según la teoría del apelante estos últimos son los que tienen el deber de cuidarse a sí mismos y ejercer toda la diligencia para evitar accidentes. El ape-

lante no cita autoridades para sostener semejante teoría y por el contrario, en el caso de *El Pueblo* v. *Blandford*, 23 D.P.R. 630, se explican los principios sustanciales que deben prevalecer en tales casos.

"De acuerdo con las autoridades nos sentimos obligados a declarar que cualquiera que trate de pasar delante de los viandantes en la carretera a gran velocidad y sin estar seguro de que dichos viandantes tienen conocimiento de la llegada de la máquina, es culpable de negligencia flagrante. El procede sin el debido cuidado y circunspección. Cuando ocurre una muerte, el guiar sin miramiento alguno siempre ha sido castigado por la ley de homicidio.

"Como hemos visto, la corte tenía derecho a inferir que el apelante guiaba a una velocidad peligrosa, peligrosa por pasar delante de los viandantes que no han sido avisados y pueden ser alarmados. El sonar la bocina fué simplemente la cosa en particular que hizo desviar a los viandantes del curso que llevaban, pero un vehículo que se acerca, algún movimiento o distracción entre los mismos, o cualquiera otra razón pudo asimismo haber hecho que cruzaran ellos repentinamente frente a la máquina. La suposición del acusado parece haber sido la de que por el simple hecho de que él se encontraba bien a la derecha y vió que no había obstáculos en el camino ante él, estaba justificado en pasar a los viandantes a gran velocidad sin más precaución. Esta no es la ley. El conductor de una máquina debe siempre manejarla de tal modo que pueda evitar causar daño a la gente que viaja por la carretera. El no tiene derecho a pasar delante de ellos a una velocidad peligrosa, a menos que esté justificado en creer que tienen ellos conocimiento de su llegada y estén preparados para dejarle expedito el paso. Cualquier hombre tiene derecho a caminar por la carretera y el conductor de un automóvil que pretenda pasar por delante del mismo debe tener motivos para creer que el viandante tiene conocimiento de la llegada de la máquina, o que ha sido avisado debidamente. Un automóvil puede causar más daño que cualquier otro vehículo en un camino. Tiene derecho a estar allí pero debe respetar los derechos de los demás." 23 D.P.R. 630-31.

"El deber de que un automóvil quede bajo un control razonable implica naturalmente que el conductor ejercitará el poder de dominio siempre que sea razonablemente necesario para evitar ocasionar daños a otras personas. Si un viandante cruza su camino tan cerca del vehículo que puede ocurrir una colición, la velocidad del

carro debe ser reducida. Además, las circunstancias pueden ser
tales como cuando es inminente una colisión que el cuidado razo-
nable en el manejo del vehículo requiere que se pare. El conduc-
tor de un automóvil no cumple necesariamente con su deber mar-
chando muy despacio, sino que debe parar el vehículo si es nece-
sario para evitar causar un daño a un viandante.'' Huddy on
Automobiles, quinta edición, p. 546.

Todos los errores señalados por el apelante han sido
considerados y por todo lo expuesto *la sentencia de la corte
inferior debe confirmarse.*