JUANA CRUZ RIVERA, ETC., demandantes y apelantes, *v.* RAMÓN RIVERA y RAMONA SÁNCHEZ, demandados y apelados.

Núm. 10605.—*Sometido:* Agosto 26, 1952.—*Resuelto:* Agosto 29, 1952.

*Guillermo Bauzá*, abogado de los apelantes; *Manuel Cruz Horta*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El problema esencial en este caso consiste en determinar la ausencia o existencia de responsabilidad civil de los padres

de una niña menor de 12 años de edad por los daños y perjuicios causados por esa niña al empujar a otro niño compañero de clases en un salón de escuela. El antiguo Tribunal de Distrito de Puerto Rico, Sección de San Juan (ahora Tribunal Superior, Sala de San Juan), dictó sentencia declarando sin lugar la demanda de daños y perjuicios presentada en este caso por los padres de Juana Cruz Rivera, quien se alega resultó lesionada al empujar la hija de los demandados a otro niño. Ante el tribunal inferior desfiló exclusivamente la prueba de la parte demandante, ya que los demandados sometieron el caso a base de esa prueba de los reclamantes. Contra esa sentencia han apelado los demandantes, y como único error señalado alegan que el tribunal inferior erró al declarar que no es imputable la negligencia de la menor Myrna Rivera Sánchez a sus padres los demandados. Los demandados-apelados no han presentado alegato alguno.

■■ La Corte a quo formuló las siguientes conclusiones en cuanto a los hechos, cuyas conclusiones no han sido impugnadas:

"Que las edades de Juanita Cruz Rivera, Plácido Luis Rosa y Myrna Rivera Sánchez, fluctúan entre las edades de ocho a doce años de edad, estando todos en el sexto grado de escuela primaria; que el día 9 de septiembre de 1949, a eso de las 10:15 de la mañana, estando dichos menores en la escuela Jesús María Quiñones, y la profesora en la puerta de su salón de clases, como a doce pies más o menos del lugar del accidente, y durante la hora conocida en el curriculum de nuestras escuelas como de merienda o recreo, la hija menor de los demandados y la menor Juanita Cruz Rivera, estaban de pie, entre dos filas de pupitres, en el momento que otro alumno de nombre Plácido Luis Rosa iba con un canasto usándolo como zafacón para echar los desperdicios que dejaban los muchachos de su merienda así como los papeles que encontraba en el piso del salón; que al pedirle Myrna a Plácido que la dejara pasar para ir a botar una cáscara en otro zafacón, Plácido le contestó que para permitirlo tenía que tocar bocina; que entonces ella lo empujó, pasando, y él se fué para atrás, y se llevó el pupitre de la menor demandante cayendo ésta al suelo con el brazo derecho debajo y soportando el peso de su cuerpo,

fracturándose el mismo; que la llevaron al Hospital Municipal donde fué atendida, le sacaron radiografías y la enyesaron; que la fractura de los huesos ha quedado consolidada y a juicio del doctor que la examinó, la niña tiene una limitación de flexión en ese brazo de quince grados que es posible que desaparezca pero no puede en estos momentos asegurarlo; que tanto el padre como la madre de la menor lesionada sufrieron torturas y angustias mentales como consecuencia de dicho accidente; que Myrna estaba en la escuela pública bajo la dirección de una maestra competente, como lo son todos los maestros designados por el Gobierno de Puerto Rico para regir sus escuelas; que al enviarla a la escuela, sus padres observaron la conducta normal o "standard" de todo padre en relación con sus hijos de edad escolar.

"No hubo prueba alguna del montante pecuniario de los daños alegados, ni sobre la presencia de los padres de Myrna en el sitio donde ocurrió el accidente, ni sobre actuación alguna por parte de éstos que los conectara con la causa del mismo, ni falta alguna por parte de ellos, en consecuencia de la cual pudiera atribuírseles negligencia como causa de los daños, ni de que Myrna fuera una niña de tales hábitos o características que requirieran una determinada negligencia u observancia en sus actuaciones."

Los artículos 1802 y 1803 de nuestro Código Civil, en su parte relevante a este caso, disponen lo siguiente:

"Artículo 1802.—El que por acción u omisión cause daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.

"Artículo 1803.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre, y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

". . . . . . . .

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

La responsabilidad de los padres que surge del anterior articulado es una de carácter primario, y no secundario.

Esto es, se basa en la propia culpa o negligencia de los padres, y no en la de los hijos. Leonardo A. Colombo: *Culpa Aquiliana*, página 322. Esa culpa o negligencia de los padres guarda relación con su deber de ejercer vigilancia sobre los hijos menores de edad que vivan en su compañía, de imponer la debida disciplina sobre sus hijos y de suministrarles una educación y un ambiente adecuados, a fin de evitar la realización de actos dañosos por niños de poco discernimiento y reducida capacidad intelectual. *Nadal* v. *Miranda*, 27 D.P.R. 323, 328; *Portalatín* v. *Noriega*, 33 D.P.R. 790; *Rodríguez* v. *Santos*, 40 D.P.R. 48; *Soto* v. *Corte*, 52 D.P.R. 474; 12 Manresa 661, ed. 1951; Planiol-Ripert, *Derecho Civil Francés*, Vol. 6, página 861. En Colombo, *Culpa Aquiliana*, página 321, se dice lo siguiente:

" . . . El fundamento, sin embargo, ofrece matices especiales, porque si es cierto que los progenitores ejercen sobre sus descendientes vigilancia directa, tanto más necesaria cuanto menor sea la edad de los mismos, no lo es menos que esa vigilancia es la derivación práctica e inmediata de los deberes impuestos por la patria potestad, deberes reglamentados por la ley y que gravitan sobre el padre y la madre conjuntamente. Los arts. 265, 266, 278 y sus concordantes obligan a uno y otro a corregir o hacer corregir moderadamente a sus hijos, con o sin la intervención del juez; a criarlos y a elegirles una profesión; a alimentarlos y educarlos según sus medios de fortuna, etc. obligaciones que se transforman, respecto de los favorecidos, en el acatamiento y la obediencia que deben a quienes los trajeron al mundo. Por eso 'colocados los hijos bajo la potestad de los padres, éstos están en el deber y en la situación, con la autoridad que la potestad les confiere, de mantenerlos y obligarlos a moverse dentro de los límites del deber y del respeto debido a las personas y a la propiedad ajena. Si los hijos los franquean, esa extralimitación es, en la mayoría de los casos, debida a la falta de vigilancia y cuidado de los padres o a un relajamiento de la moral y de la disciplina del hogar doméstico'.

"Si existe culpa será, pues, culpa *in vigilando,* por no haberse tomado las medidas aconsejadas por la prudencia para que los menores se conduzcan de acuerdo con los derechos de los demás.

A los padres corresponde velar para que así suceda, supliendo con su experiencia, sus conocimientos y su actividad las deficiencias inherentes a seres que todavía no han alcanzado completo desarrollo físico e intelectual.

"En realidad, la responsabilidad de los padres no es responsabilidad por el hecho ajeno, sino por su propio hecho, emanada del incumplimiento de las cargas que la ley pone sobre sus hombros. Así lo ha reconocido un fallo al establecer que la responsabilidad de los padres no radica en la falta de los hijos, sino en la que a ellos les es imputable por su imprevisión o falta de ciudados. Sin embargo, se la considera como compleja porque el acto material generador de la injuria lo comete alguien extraño al verdaderamente responsable."

Antonio Borrel Maciá en su obra *Responsabilidades derivadas de culpa extracontractual civil*, nos indica, a la página 113:

"Una de las funciones esenciales de la paternidad, después de poner los hijos en el mundo, es educarlos y cuidarlos para que el día de mañana sean hombres completos y aptos para la vida en relación con sus semejantes. El niño que viene al mundo sin poderse valer, necesita absolutamente de sus padres, que han de proveer a su sostenimiento material, dándole los alimentos necesarios para su vida, y velar por su seguridad y la de sus semejantes. Tienen la máxima autoridad y prestigio sobre ellos; y si, a pesar de esto—caso raro en la naturaleza,—por despreciar los mandatos paternos, precisa imponer un correctivo al hijo, la ley brinda al padre la forma de hacerlo; y sólo en circunstancias verdaderamente extraordinarias, de tratarse de padres desalmados que, en vez de cuidar a sus hijos por amor, manifiestan odio para con ellos o los educan en un ambiente de inmoralidad, los incitan al crimen, etc., sólo entonces la ley se ve obligada a suspender la patria potestad y a prescribir los medios más adecuados para que el hijo no sufra las influencias perversas de sus padres, retirándole de su poder y compañía.

"Esto guarda relación con la responsabilidad: cuanta más autoridad, más responsabilidad; cuanta más libertad, más responsabilidad. El padre es responsable de los actos de sus hijos mientras están en su potestad, viven en su compañía y, por consiguiente, puede vigilarlos."

En Oyuelos, *Digesto*, Vol. 7, página 745, se dice:

"La patria potestad, conjunto de derechos y obligaciones, cuenta, entre éstas últimas, la de vigilancia de los actos sometidos a ella, y en esta función inspectora o vigilante, o de control, como cabría ahora decir, admitiendo este extranjerismo, radica el fundamento de la responsabilidad impuesta a los padres por el párrafo segundo del artículo 1903 . . ."

En otras palabras, la responsabilidad paternal es función de la autoridad paternal. Los padres controlan la conducta de sus hijos, y ello implica el deber de ejercitar un cuidado razonable para evitar que los hijos establezcan un riesgo irrazonable de daños a terceras personas. *Restatement of the Law of Torts*, Vol. 2, pág. 858.

En el caso de *Nadal* v. *Miranda*, 27 D.P.R. 323, se impuso responsabilidad al padre de Rafael Miranda Carbó, hijo menor del demandado, por haber causado el hijo la muerte de otra persona, disparándole con una escopeta de cazar en forma negligente y temeraria.

En *Portalatín* v. *Noriega*, 33 D.P.R. 790, se declaró responsable en daños y perjuicios al padre de Cándido Noriega, menor de 18 años de edad, por haber este último conducido un vehículo negligentemente y haber arrollado al demandante. Se resolvió lo siguiente:

"Cuando se demanda al padre para que indemnice los daños y perjuicios causados por negligencia de su hijo menor de 18 años en la conducción de un automóvil, la defensa de que el padre empleó toda la diligencia de un buen padre de familia debe referirse a los hechos que ocasionaron el daño y no se prueba con la mera evidencia de que el padre hizo asistir a su hijo a escuelas o universidades, o que el menor había sido autorizado por el Gobierno, mediante examen, para manejar vehículo de motor.

"El padre . . . . no deja de ser responsable por el hecho de que el accidente ocurrió mientras el hijo actuaba como empleado de otra persona . . . ."

Se dice en la opinión que, como cuestión de hecho, el menor había sido multado con anterioridad al accidente por exceso

de velocidad y que de esto tuvo conocimiento el padre, "quien entonces pudo ejercer la debida diligencia de un buen padre de familia para prevenir ulterior responsabilidad, revocando el permiso que había concedido al hijo para el manejo del auto."

 Ahora bien, la responsabilidad de los padres por las actuaciones de sus hijos menores de edad no es absoluta. Los padres no son garantizadores *sine qua non* de las actuaciones de sus hijos. Cada caso específico debe medirse por sus circunstancias especiales, y los hechos de cada caso deben ser considerados a los fines de determinar si hubo o no hubo negligencia de parte de los padres, en cuanto a si las actuaciones del hijo se deben al incumplimiento por el padre de su deber de vigilancia, represión, disciplina y educación. (A tal efecto véase el caso de Lousiana de *Johnson* v. *Butterworth*, 157 So. 121, bajo un estatuto similar al nuestro.)

Si consideramos las circunstancias de los casos de *Nadal* v. *Miranda* y *Portalatín* v. *Noriega*, supra, en donde los hijos causaron daños disparando negligentemente una escopeta y conduciendo negligentemente un vehículo, es evidente que los hijos realizaron actuaciones que de por sí envolvían peligros a terceras personas. La peligrosidad de las actuaciones determinaba la negligencia de los padres. El deber de vigilancia guarda relación con el deber de anticipar riesgos, que, a su vez, depende en la peligrosidad de la conducta. El hecho en sí de que una persona menor de edad dispare una escopeta o conduzca un vehículo implica la probabilidad sustancial de que sus padres no hayan cumplido debidamente con sus deberes de vigilancia y educación. Esta conducta implica la probabilidad de un ambiente defectuoso en el hogar.

Las circunstancias del caso de autos son distintas y no implican negligencia de parte de los padres. Se trata de un juego entre niños, dentro de un salón de clases, en que una niña empuja a otro niño, como un incidente de una broma infantil, sin que hubiese mediado intención malévola de causar daños y sin haber mediado negligencia. Se trata de una ac-

tuación ordinaria y corriente entre niños, que no envolvía peligrosidad de por sí, y que más bien dió lugar a un accidente desgraciado. Los padres de la niña causante del daño no venían obligados a evitar, mediante la reprensión o la vigilancia anterior, el que su hija se dedicase a un juego infantil de manos con sus compañeros. Por más activa y eficaz que hubiese sido la vigilancia anterior, y por más adecuada que hubiese sido la educación en el hogar, ello no hubiera evitado accidentes ordinarios y corrientes como el que ocurrió en el caso de autos. A un padre se le debe imponer la necesidad de ejercitar control para evitar aquella conducta de sus hijos que envuelva riesgos anticipables. (Véase *Jorge* v. *Umpierre*, 49 D.P.R. 78, en donde se dice que negligencia es aquella conducta que establece un riesgo indebido de daños). Pero tal clase de conducta peligrosa no está envuelta en el caso ante nos.

En el caso de Lousiana de *Wagner* v. *Barbin*, 125 So. 766, se resuelve que los padres no son responsables por daños causados accidentalmente por sus hijos. En ese caso un niño tiró una piedra con un taco (tira-vete, *sling-shot*) y una niña recibió el impacto de la piedra. Se determinó que los niños estaban habituados a usar esos instrumentos en forma que no era maliciosa ni malévola, y que siendo el daño puramente accidental, no había necesidad de cuidado, vigilancia o disciplina paternal.

En el caso reciente de Louisiana de *Phillips* v. *D'Amico*, 21 So. 2d 748, 750, se estableció la responsabilidad de un padre por el hecho de que el hijo causó daños con un revólver de aire, pero se dijo, incidentalmente, lo siguiente:

"Por supuesto, si la instrumentalidad usada no es inherentemente peligrosa y no ha habido negligencia en la forma de usarla, no hay responsabilidad aunque otra persona haya sufrido daños en forma accidental. *Toca* v. *Rojas*, 93 So. 108 y *Wagner* v. *Barbin*, 125 So. 766."

Bajo el *Derecho Común* y en la mayoría de las jurisdicciones en los Estados Unidos el hecho en sí de la paternidad no

establece responsabilidad paternal por los actos torticeros de hijos menores de edad, aun si viven en la compañía del padre. La responsabilidad surge solamente en virtud de la negligencia independiente del padre, o si el hijo actúa como agente de sus padres o cuando los padres ratifican o consienten a los actos de sus hijos. 39 *American Jurisprudence* 690, sección 55. La negligencia del padre se manifiesta cuando el propio padre entrega objetos peligrosos a sus hijos o no reprime a un hijo que él sabe tiene tendencias peligrosas. Ninguna de esas situaciones son aplicables a los hechos de este caso.

■■■ El hecho en sí de que la menor en este caso estuviera en la escuela al ocurrir el accidente no excluye cualquier posible responsabilidad de sus padres ya que la menor seguía viviendo en la compañía de sus padres, y continuaba sujeta a su autoridad. Giorgi, *Teoría de las Obligaciones*, Vol. 5, págs. 399, 400. Sin embargo, aunque no es determinante de ausencia de responsabilidad, ese hecho debe ser considerado como uno de varios factores en la formación de un criterio en cuanto a si los padres han cumplido con su deber de vigilancia. Los padres actúan con justificación al desprenderse de su vigilancia inmediata de los hijos para someterlos a la custodia transitoria de las autoridades escolares, y no deben los padres sufrir las consecuencias de actuaciones ordinarias y corrientes de los hijos mientras están en la escuela.

■ Hay un aspecto de este caso que debe ser considerado. Al celebrarse la vista en la corte inferior, los demandados no presentaron prueba de clase alguna y sometieron el caso a base de la prueba de la parte demandante, y fué a base de esa prueba que la corte inferior dictó sentencia declarando sin lugar la demanda. Ahora bien, el último párrafo del artículo 1803 del Código Civil aplicable al caso de autos, dispone lo siguiente:

"La responsabilidad de que trata este artículo cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

Una interpretación literal de ese articulado podría dar lugar a la conclusión de que se presume la responsabilidad y que le corresponde a los padres el presentar prueba para desvirtuar esa presunción mediante prueba de diligencia.

En 12 Manresa 664 (edición 1951), se dice lo siguiente:

"Réstanos indicar para dejar explicado el alcance o extensión de la responsabilidad impuesta a aquellas personas que deben responder de los daños causados por otras, así como los efectos de esta obligación:

"1º Que dicha responsabilidad cesa cuando las personas a quienes la impone el art. 1.903 prueben que emplearon toda la diligencia de un buen padre de familia, estableciéndose en su virtud en dicho artículo una presunción legal de la culpabilidad de las personas citadas en él, pues en razón a las relaciones de autoridad o superioridad que mantienen con los autores del daño causado, la ley presume que les es imputable la causa del mismo por su propia culpa o negligencia, considerándoles como autores morales de dicho daño por no haber puesto de su parte el cuidado o la vigilancia necesaria para evitar que aquéllos dieran origen a él, conforme con cuyo criterio se halla la sentencia de 18 de mayo de 1904 antes citada. Pero esa presunción establecida por la ley no es absoluta o *juris et de jure*, sino *juris tantum*, y, por consiguiente, cede a la prueba en contrario. . ."

Sin embargo, si de la propia prueba de la parte demandante surge la ausencia de negligencia de los padres, y esa prueba establece que no ha habido incumplimiento de su deber de vigilancia, y si esa prueba de los reclamantes es compatible con el ejercicio de una adecuada diligencia paternal, como ocurre en el caso de autos, entonces de la prueba de la parte demandante no ha surgido presunción alguna adversa a los demandados, y es innecesario que éstos últimos prueben afirmativamente el ejercicio de diligencia.

Desde el punto de vista de la alegada negligencia de la menor causante del daño, debe recordarse lo resuelto por este Tribunal Supremo en los casos de *Hernández* v. *Acosta*, 64 D.P.R. 171 y *Figueroa* v. *Picó*, 69 D.P.R. 401, al efecto de que a niños de pocos años no se les requiere que cumplan con

las normas de conducta que es razonable esperar de los adultos. Su conducta debe juzgarse por la norma de conducta que puede esperarse de un niño de igual edad, inteligencia y experiencia. Los hechos de este caso no implican negligencia de parte de Myrna Rivera Sánchez. Tampoco debe imputarse responsabilidad a los padres a base de un alegado acto de acometimiento y agresión de parte de esa niña. La prueba y los hechos no demuestran que ella actuara con la intención de causar daños, elemento esencial del acometimiento y agresión. Incidentalmente, en 155 A.L.R. 85 se anota la jurisprudencia en los Estados Unidos en cuanto a responsabilidad de padres por daños intencionales causados por sus hijos, y se determina que esa responsabilidad por actos intencionales de hijos está limitada a situaciones en que los padres conocen, o están bajo el deber de conocer los hábitos y tendencias peligrosas y destructivas de sus hijos y no toman medidas de restricción o disciplina. Tal no es la situación en el caso de autos.

*La sentencia del tribunal inferior será confirmada.*