JUAN ÁLVAREZ IRIZARRY, por sí y en representación de la Sociedad de Gananciales constituída con su esposa MARÍA HERIBERTA SEDA, demandante y apelante, *v.* GILBERTO IRIZARRY MORALES y FERMÍN IRIZARRY, éste por sí y como padre con patria potestad sobre el primero, demandados y apelados.

Número 11717.

*Sometido:* 3 de junio de 1957. *Resuelto:* 24 de junio de 1957.

*Pedro Nelson Colberg* y *Raúl Ramos Torres,* abogados de los apelantes; *Yamil Galib Frangie,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En la mañana del sábado, día 22 de agosto de 1953, Fermín Irizarry se encontraba recogiendo café en una finca de su propiedad sita en el barrio "Llanos Tuna" del municipio de Cabo Rojo. Irizarry había llevado consigo un revólver y lo había puesto encima de una mochila de café a la orilla de una vereda que conduce a su finca. Pasó por un camino contiguo a dicha finca Félix Álvarez, quien provocó de palabras a Irizarry, iniciándose entre ellos una lucha cuerpo a cuerpo. Mientras se desarrollaba esa lucha, llegó allí un hijo de Fermín Irizarry, de nombre Gilberto, quien iba a llevarle café a su padre. Este Gilberto, quien entonces tenía 17 años de edad, tomó el revólver que estaba sobre la mochila de café, y

con él hizo varios disparos contra Félix Álvarez produciéndole heridas que le ocasionaron la muerte.

Los padres del interfecto Félix Álvarez, nombrados Juan Álvarez Irizarry y Heriberta Seda, interpusieron ante el Tribunal Superior, Sala de Mayagüez, una acción contra el mencionado Gilberto Irizarry y su padre Fermín Irizarry reclamando daños y perjuicios por la muerte de su hijo Félix Álvarez Seda. ([1])

Después de un juicio en los méritos el tribunal de instancia dictó sentencia condenando al menor demandado Gilberto Irizarry a pagar a los demandantes la suma de $3,000 como indemnización por todos los daños sufridos por dichos demandantes, y exonerando de responsabilidad al codemandado y padre del menor, Fermín Irizarry.

Los demandantes apelaron y la cuestión principal a resolver es si bajo los hechos de este caso, el codemandado Fermín Irizarry es responsable de los daños causados por su menor hijo, Gilberto.

El art. 1802 del Código Civil dispone que el que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado. 31 L.P.R.A., sec. 5141. Y el art. 1803 del mismo Código establece la exigibilidad de esta obligación, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder. 31 L.P.R.A., sec. 5142. Al efecto dicho artículo dispone:

"La obligación que impone la sección anterior [art. 1802] es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre, y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

"      .      .      .      .      .      .      .      .

"La responsabilidad de que trata esta sección cesará cuando las personas en él mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."

---

([1]) Félix Álvarez Seda era casado y tenía un hijo pero estos herederos no figuran como partes en el litigio.

Nuestra jurisprudencia ha reconocido que la responsabilidad de los padres que surge del art. 1803 se basa en la culpa y negligencia de los propios padres y no en la de los hijos, así como que dicha responsabilidad es de carácter primaria y no secundaria. "Esa culpa o negligencia de los padres guarda relación con su deber de vigilancia sobre los hijos menores de edad que vivan en su compañía, de imponer la debida disciplina sobre sus hijos y de suministrarles una educación y un ambiente adecuado." *Cruz* v. *Rivera*, 73 D.P.R. 682, 688; *Sociedad de Gananciales, etc.* v. *Cruz*, 78 D.P.R. 349, 359. También hemos dicho que los padres no son garantizadores *sine qua non* de las actuaciones de sus hijos; que cada caso específico debe medirse por sus circunstancias especiales, y los hechos de cada caso deben ser considerados a los fines de determinar si hubo o no hubo negligencia de parte de los padres, en cuanto a si las actuaciones del hijo se deben al incumplimiento por parte del padre de su deber de vigilancia, represión, disciplina y educación. *Cruz* v. *Rivera*, supra.

El art. 1803, supra, establece una presunción *juris tantum* de culpa en los casos previstos contra las personas en él enumeradas. Cuando se exige responsabilidad al padre o a cualquiera de las personas indicadas en dicho artículo, no es necesario probar la culpa o negligencia de éstos. Son ellos los que tienen que probar que no incurrieron en culpa o negligencia para así eximirse de responsabilidad; *Sociedad de Gananciales* v. *Cruz*, supra, excepto desde luego, que la propia prueba de la parte demandante revele la ausencia de culpa o negligencia de los padres. *Cruz* v. *Rivera*, supra.

Teniendo presente los anteriores principios procede ahora determinar si el codemandado Fermín Irizarry incurrió en falta de vigilancia (*culpa in vigilando*) y no le impuso la debida disciplina a su hijo.

El tribunal sentenciador estimó probado, y su conclusión está ampliamente sostenida por la prueba, que dicho demandado Fermín Irizarry "siempre se ha esforzado por darle a éstos (a sus hijos) la mayor educación posible dentro de sus

limitaciones económicas"; que el codemandado nunca dió malos ejemplos a sus hijos; que "el joven Gilberto Irizarry nunca antes había hecho uso de armas de fuego ni había estado envuelto en peleas, y que éste era un muchacho inteligente, estudioso y serio, quien cursaba el tercer año de Escuela Superior para la fecha en que ocurrieron estos hechos." La prueba incontrovertida presentada por los demandados demostró además que el menor Gilberto Irizarry no usaba licor ni frecuentaba cafetines; que su tiempo lo invierte en la escuela y en su hogar; que se retira a dormir entre siete y media y ocho de la noche y que los sábados ayudaba a su padre en las labores agrícolas de éste.

A la luz de los hechos específicos de este caso y de la doctrina expuesta en *Cruz* v. *Rivera,* supra, tenemos que convenir con el tribunal sentenciador en que las actuaciones del menor Gilberto Irizarry no se debieron al incumplimiento por parte de su padre del deber de éste de vigilancia, reprensión, disciplina y educación. A mayor abundamiento debemos apuntar que el codemandado Fermín Irizarry acostumbraba guardar su revólver bajo llave en un chifforobe; que con anterioridad al día de los hechos nunca lo había llevado a su trabajo y que ese día ninguno de sus hijos sabía que él llevaba consigo o portaba el arma. En cuanto a la actuación culposa del menor Gilberto, el tribunal a quo encontró probado que éste hizo uso del revólver "por su cuenta, sin indicación alguna de parte de su padre, y sin que éste hubiese podido evitar que su hijo hiciese esos disparos. El revólver estaba cerca del sitio donde cogía café su padre, a la orilla del camino que tanto Fermín Irizarry como sus hijos acostumbraban a usar para ir a esa parcela, y la prueba demuestra que al llegar Gilberto Irizarry a la parcela ya su padre había recibido un fuerte golpe en el pecho que le había fracturado dos costillas, y siendo lógico presumir que éste en ese momento luchaba en desventaja con el interfecto y no tuvo oportunidad de evitar que su hijo hiciese esos disparos a su contrincante."

No debe confundirse la culpa del menor, que en este caso debemos aceptar, con la culpa de su padre ya que éste responde propiamente hablando, no del hecho de sus hijos sino de su propia culpa. Comentando sobre la fuerza de la presunción de responsabilidad que establece el art. 1384 del Código Civil francés, (²) que a ese respecto concuerda con el 1803 del nuestro, se dice en la obra "Tratado de la Responsabilidad Civil" de Henri Mazeaud, Tomo I, pág. 321:

"Definido ya el contenido de la presunción que establece el artículo 1384, resta precisar la fuerza de esa presunción. ¿Cómo pueden los padres eludir la responsabilidad que establece contra ellos el artículo 1384? ¿Qué prueba en contrario deben aportar?

"El problema surge porque es evidente que la presunción no es *juris et de jure*. La prueba en contrario es posible. El inciso 5o. del artículo 1384 la permite expresamente y al propio tiempo trata de precisarla: 'Dicha responsabilidad será efectiva a menos que el padre o la madre demuestren que no pudieron evitar el hecho que originó esa responsabilidad'. ¿Qué nos dan a entender estas palabras? Cuando la ley establece una presunción de responsabilidad, se acoge a uno u otro de los dos sistemas siguientes: o bien permite al autor del perjuicio exonerarse demostrando que no ha cometido culpa alguna; o bien exige que el autor del perjuicio demuestre que éste se debió a una causa extraña, como fuerza mayor o culpa de la víctima. ¿Cuál es en este caso la prueba exigida? ¿Es únicamente la de la falta de culpa? ¿O es, por el contrario, la de la fuerza mayor? ¿Quedan los padres exonerados al demostrar que han vigilado bien a su hijo y le han dado buena educación, o no eluden

---

(²) Dicho artículo dispone:

"Se responde, no solamente del daño que se ha causado por el propio hecho, sino también por el que ha causado el hecho de las personas de las que debe responderse o las cosas que están bajo nuestra guarda. El padre, y la madre después de la muerte del marido, son responsables del daño causado por los hijos menores que viven con ellos.—Los amos y los comitentes del daño causado por sus criados y encargados en las funciones a que están destinados.—Los maestros y los dueños de los talleres, del daño causado por sus alumnos y aprendices mientras están bajo su vigilancia.—Las responsabilidades citadas serán exigibles, a no ser que el padre o madre, maestros y dueños de talleres prueben que no han podido impedir el hecho que origina dicha responsabilidad." (3 Colín y Capitant, Curso elemental de Derecho Civil, tercera ed. española (1951), págs. 854-855.)

la responsabilidad sino demostrando que fué absolutamente imposible prever y evitar el perjuicio?

"Los trabajos preparatorios del Código Civil francés, no son muy claros acerca de este punto. Bertrand de Greuille, en su informe al Tribunado, declara: 'Si los padres o madres llegan a probar que se hallaron en la imposibilidad de impedir el hecho motivo de la queja, desaparece entonces la garantía, porque *la imposibilidad satisfactoriamente comprobada equivale a fuerza mayor,* la cual no da campo para acción alguna en provecho de quien es la víctima del hecho.' Parece que con estas palabras no se exonera a los padres sino cuando hay fuerza mayor, aunque el término *equivale* deja abierta la puerta a la discusión. Pero Tarrible, en su discurso al Cuerpo Legislativo, se limita a la falta de culpa: 'La responsabilidad establecida por el artículo 1384 cesa respecto de todos, si prueban que no pudieron impedir el hecho que la origina. La responsabilidad no puede, en efecto, afectar a *los que están exentos de cualquier reproche.'*

"En este último sentido se pronuncia, y con mucha razón, la jurisprudencia. La responsabilidad establecida por el inciso 2o. del artículo 1384 se funda en los deberes que dimanan de la patria potestad; desde el momento en que esos deberes se hayan cumplido fielmente, no hay lugar a derogar el derecho común. No es, pues, indispensable que los padres demuestren la fuerza mayor, la imposibilidad de prever el perjuicio y de impedirlo, el evento *imprevisible e invencible.* Los padres quedan libres desde que demuestran que un individuo normal hubiera educado y vigilado a su hijo como ellos educaron y vigilaron al suyo, en una palabra desde que prueben que no ha habido ni falta de vigilancia ni falta de educación."

Y en la página 324 de la misma obra, leemos:

"Una vez sentadas las normas que gobiernan la responsabilidad que establece el inciso 2o. del artículo 1384, es fácil precisar el fundamento de dicha responsabilidad.

"La responsabilidad desaparece cuando los padres prueban que están exentos de culpa y solamente en ese caso. De aquí se deduce forzosamente que la responsabilidad se basa en la culpa cometida por los padres: falta de vigilancia o mala educación.

"Tal es precisamente el fundamento que le atribuían los redactores del Código Civil francés. Treilhard escribía, refiriéndose de manera general a los casos de responsabilidad por el hecho de otro, pero aludiendo especialmente a los padres: 'Aqué-

llos a quienes esta responsabilidad se impone tienen que reprocharse cuando menos, unos debilidad, otros mala elección, todos negligencia: ¡felices si su conciencia no les reprocha el haber inculcado malos principios y dado peores ejemplos! Pueden los padres penetrarse profundamente de la extensión y de la santidad de sus deberes. La vida que nuestros hijos derivan de nosotros no es ya un beneficio si no los formamos en la virtud y si no hacemos de ellos buenos ciudadanos'. 'Esta obligación, declaraba Bertrand de Gréuille, está vinculada a la potestad, a la autoridad que la ley concede a los padres sobre sus hijos menores, a los deberes que les impone con miras a la perfección de la educación de esos hijos, a la necesidad de que los padres vigilen la conducta de sus hijos, con aquel celo, aquel cuidado, aquel interés que deben inspirarles tanto el anhelo de dicha para sus hijos como el tierno afecto que les profesan.' Los padres, maestros y artesanos, afirmaba Tarrible, 'están investidos de una autoridad suficiente para contener a sus subordinados dentro de los límites del deber y del respeto debido a la propiedad ajena. Cuando los subordinados traspasan esos límites, tales extravíos se atribuyen con razón al relajamiento de la disciplina doméstica que se halla en manos del padre, de la madre, del comitente, del maestro y del artesano. Ese relajamiento es una culpa.'

"Siendo la culpa de los padres el fundamento de la responsabilidad que establece el inciso 2o. del artículo 1384 del Código Civil francés, podemos preguntarnos por qué se han derogado las reglas de derecho común, por qué se ha creído indispensable presumir la existencia de esa culpa, dispensar a la víctima de la necesidad de demostrarla. Es fácil comprender la razón. Con mucha frecuencia, la víctima del hijo nada sabe acerca de ese hijo, antes de la realización del perjuicio, no lo conocía a él ni a sus padres. ¿Cómo entonces exigir de la víctima que establezca la manera como ese hijo era vigilado o fué educado? Se tropezaría las más de las veces con una verdadera imposibilidad. Por el contrario, es más fácil que los padres suministren al tribunal los elementos que le permitan decidir si hubo o no falta de vigilancia o de educación. He aquí por qué se ha invertido la carga de la prueba. Ello obedece a la naturaleza especial de las culpas que sirven de fundamento a la responsabilidad de los padres.

"Vemos así que la responsabilidad de los padres, que prevé el inciso 2o. del artículo 1384, no es propiamente hablando una

responsabilidad *por el hecho de otro.* Los padres no responden del hecho de sus hijos sino de su propia culpa.

"Es preciso, pues, rechazar, por lo menos en este dominio, la teoría del riesgo; la culpa sigue siendo una condición esencial de la responsabilidad; la única diferencia estriba en que esa culpa se presume."

Habiendo la prueba del demandado Fermín Irizarry destruído la presunción de culpa, la sentencia que le exoneró de responsabilidad es correcta y no debe ser revocada.

■ En lo que respecta a la sentencia dictada contra el menor Gilberto Irizarry, estimamos que en vista de todas las circunstancias de este caso no debemos intervenir con la discreción ejercitada por el tribunal sentenciador al fijar la cuantía de la indemnización concedida a los demandantes-apelantes.

*La sentencia apelada será confirmada.*