La Sociedad de Gananciales existente entre FEDERICO CABRERA y su esposa MARÍA AMELIA MALDONADO, demandante, apelada y apelante, *v.* VICENTE CRUZ MENÉNDEZ, VICENTE CRUZ MORELL, BLANCA GONZÁLEZ SILVA y su esposo CARLOS PATTERNE, HAROLD MATIENZO y THE UNITED STATES FIDELITY AND GUARANTY CO., demandados, apelantes los dos primeros y apelados todos.

Número 11431.
*Sometido:* 2 de marzo de 1955. *Resuelto:* 27 de mayo de 1955.

350

*B. Sánchez Castaño* y *R. Rivero Cervera,* abogados de la demandante-apelante; *A. Cadilla Ginorio* y *Juan Enrique Géigel,* abogados de los demandados-apelantes.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

El día 26 de febrero de 1951 Harold Matienzo pidió prestado a Blanca González Silva el automóvil de ésta para trasladarse de Arecibo a San Juan, con el fin de asistir a una fiesta que los empleados del National City Bank celebraban aquí ese día. La señora González Silva accedió a ello y aquella misma tarde Matienzo vino a San Juan en dicho automóvil, acompañado de Vicente Cruz Menéndez, compañero de trabajo suyo en la sucursal de Arecibo del citado banco. En el curso de la fiesta Cruz Menéndez, quien para aquel entonces era menor de edad, tomó prestado el vehículo a Matienzo y lo usó para ir al Barrio Obrero, de Santurce, para visitar a la joven con quien luego contrajo matrimonio. Al regresar de esa visita, entre 9:00 y 9:30 de la noche, Cruz Menéndez arrolló al demandante Federico Cabrera Viera. La sociedad de gananciales existente entre éste y su esposa (¹) instó demanda contra Harold Matienzo, Vicente Cruz Menéndez y su padre Vicente Cruz Morell; contra Blanca González y su esposo Carlos Patterne; y contra la United States Fidelity and Guarantee Co., en su carácter de aseguradora del automóvil, reclamando de todos ellos la suma total de $25,000 por los daños y perjuicios sufridos como consecuencia del accidente, más costas y honorarios de abogado.

El Tribunal Superior, Sala de San Juan, declaró con lugar la demanda en cuanto a los demandados Vicente Cruz Menéndez y Vicente Cruz Morell, a quienes condenó a pagar a la sociedad demandante la suma de $3,000 por concepto de daños y perjuicios, más $500 para costas, gastos y honorarios de abogado. (²) En cuanto a los demás demandados la declaró sin lugar. No conformes, tanto la demandante como los de-

---

(¹) Cf. Meléndez v. Iturrondo, 71 D.P.R. 60, 62.

(²) Al condenar a una parte al pago de costas y honorarios de abogado la mejor práctica es así decirlo en cuanto a las costas, y especificar la cantidad exacta que la parte perdidosa debe pagar por concepto de tales honorarios. Cf. art. 327 del Código de Enjuiciamiento Civil, según fué enmendado por la Ley 411 de 11 de mayo de 1951 (pág. 1095).

mandados Vicente Cruz Menéndez y Vicente Cruz Morell apelaron para ante este Tribunal, señalando los errores que pasamos a discutir en seguida:

*Discusión de los Errores Señalados*
*Por la Sociedad Demandante*

██ Sostiene la demandante en primer lugar que el tribunal a quo erró al eximir de toda responsabilidad a Blanca González Silva. Tal contención es claramente frívola, puesto que aun si aceptáramos, como pretende la demandante, que Blanca prestó su automóvil a Harold Matienzo y a Vicente Cruz Menéndez tendríamos siempre que concluir que la demandante no tiene razón. La prueba demuestra de manera afirmativa que Cruz Menéndez al momento de ocurrir el accidente no actuaba como agente o empleado de la señora González Silva en virtud de un contrato de trabajo. Por tanto, el art. 1803 del Código Civil no es aplicable a tal situación. [3] *Díaz v. Iturregui,* 72 D.P.R. 200. Tampoco hay evidencia que indique que el accidente se debió a negligencia de parte de Blanca González Silva. Por otro lado, el hecho de que ella prestara su automóvil a Harold Matienzo, quien según la prueba demostró no tenía licencia para conducir vehículos de motor, sin cerciorarse de si éste tenía o no tal licencia, no

---

[3] El art. 1803 del Código Civil, según fué enmendado por la Ley 120 de 12 de mayo de 1943 (pág. 373) dispone en lo pertinente que:

"La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

" . . . . . . "

"Los son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones, *y los dueños o propietarios de cualquier vehículo de motor destinado al servicio privado de su dueño o propietario respecto de los perjuicios que causen en la operación de los mismos sus empleados o agentes, debidamente autorizados para el manejo de dichos vehículos, y mientras actúen en el desempeño de sus funciones como tales empleados o agentes de acuerdo con los términos del contrato de trabajo.*

" . . . . . . . . . . "

(Bastardillas nuestras.)

puede en forma alguna constituir negligencia que la haga responsable del accidente, ya que Matienzo no era la persona que conducía el vehículo al momento de ocurrir el mismo.

 Alega asimismo la demandante que el tribunal inferior erró al eximir de responsabilidad a la aseguradora U. S. Fidelity and Guaranty Co. Al ocurrir el accidente el automóvil de Blanca estaba cubierto por una póliza de seguros expedida por esa compañía. La demandante sostiene que al momento del accidente Cruz Menéndez estaba cubierto por dicha póliza, de acuerdo con la cláusula colectiva (*omnibus clause*) que en la misma figura, y que en su consecuencia la póliza cubría los daños causados por Cruz Menéndez a Cabrera Viera. No tiene razón la demandante, ya que como veremos próximamente Cruz Menéndez no estaba cubierto por dicha cláusula. La misma reza en lo pertinente así:

> "En lo que respecta al seguro por daños personales y a la propiedad, la palabra 'asegurado' incluye al referido asegurado, a cualquiera otra persona que use el vehículo y a cualquier persona u organización que legalmente sea responsable por el uso del mismo, siempre que el automóvil sea usado por el referido asegurado o con su permiso. El seguro con respecto a cualquier persona u organización distinta al indicado asegurado no es de aplicación: . . ." (Traducción nuestra.)

Como se puede ver, el efecto de semejante cláusula es designar también como asegurado a toda persona que use el vehículo cubierto por la póliza con permiso del asegurado específicamente designado en ella. La demandante sostiene que cuando ocurrió el accidente Vicente Cruz Menéndez tenía "permiso expreso" de Blanca González Silva para usar el automóvil y, en la alternativa, que aún en el supuesto de que no tuviese tal permiso expreso, tenía "permiso implícito" de ella. La prueba en que se basa para aseverar que Cruz Menéndez usaba el automóvil con permiso expreso de la señora González Silva aparentemente consiste en la propia declaración de Cruz Menéndez. Según la versión de éste Blanca González Silva prestó el automóvil a Harold Matienzo y a él

para que ambos se trasladaran a San Juan. (⁴) Sin embargo, tanto de la declaración de Matienzo como de la declaración de Blanca se desprende claramente que el automóvil le fué prestado únicamente a aquél; que Cruz Menéndez no estaba presente cuando Matienzo pidió prestado el automóvil a Blanca González Silva; que nada se habló entre ellos acerca de Cruz Menéndez y que Blanca ignoraba que Cruz Menéndez fuera a acompañar a Matienzo a San Juan y mucho menos a usar el automóvil. El tribunal inferior, ejercitando su discreción para resolver conflictos en la evidencia, no dió crédito al testimonio de Cruz Menéndez. Como a este respecto la prueba fué conflictiva y dicho tribunal dirimió el conflicto, estando su conclusión plenamente sostenida por la prueba que tuvo ante sí, nuestro deber es resolver que Cruz Menéndez no tenía permiso expreso para usar o conducir el automóvil envuelto en el accidente.

Consideremos entonces la contención de la demandante al efecto de que Cruz Menéndez tenía permiso implícito de Blanca González Silva para usar el vehículo. Aquélla sostiene que cuando Blanca le facilitó el automóvil a Harold Matienzo, implícitamente autorizó a éste para prestárselo a Cruz Menéndez y, por ende, que al usarlo este último lo hacía con permiso implícito de Blanca González Silva. No hay duda de que el permiso que requiere la cláusula colectiva puede ser expreso o tácito. *Aetna Casualty & Surety Co.* v. *De Maison*, 213 F.2d 826; *Drake* v. *General Accident Fire & Life Assur. Corp.*, 77 S.E.2d 71; *Northwest Cas. Co.* v. *Kirkman*, 119 Fed. Supp. 828; *Norris* v. *Pacific Indemnity Co.*, 247 P.2d 1;

---

(⁴) Conviene indicar que independientemente de que Blanca González le prestara el automóvil a Cruz Menéndez y a Matienzo o solamente a este último, al momento de ocurrir el accidente, ese vehículo no se usaba para el fin para el cual fué prestado. Empero, no es necesario considerar esta cuestión, ya que como veremos más adelante Cruz Menéndez carecía de permiso de Blanca González para usar el vehículo y esto de por sí exime de responsabilidad a la aseguradora.

En cuanto a las distintas teorías sobre el efecto de desviaciones en el uso autorizado de un vehículo, véanse 126 A.L.R. 544-552; 15 Tulane L. Rev. 422.

*Hodges* v. *Ocean Accident, etc.*, 18 S.E.2d 28, certiorari denegado en 317 U. S. 705. Pero el permiso que se le concedió a Matienzo no puede constituir por sí solo autoridad para que éste prestara el vehículo a un tercero. *Cf. Aetna Casualty & Surety Co.* v. *DeMaison*, supra; *Holthe* v. *Iskowitz*, 197 P.2d 999, 1005. La prueba creída por el tribunal a quo demuestra que Blanca González Silva guardó silencio en cuanto a si Harold Matienzo podía prestar o no el automóvil a Cruz Menéndez o a otras personas. La regla general en casos de esta naturaleza aparece expuesta en 160 A.L.R. 1195, 1206, donde se dice:

"3. El comodatario original a quien se ha dado permiso para utilizar el vehículo no puede, según la inmensa mayoría de las autoridades, delegar esta autoridad a un segundo comodatario de forma que haga que el uso del vehículo por esa persona caiga dentro de la protección de la póliza, cuando el permiso inicial guarda silencio sobre la cuestión de delegación de autoridad."

Véanse además 5 A.L.R.2d 600, *et seq.;* Blashfield, *Cyclopedia of Automobile Law and Practice*, tomo 6, parte 1, ed. permanente, sec. 39.43, pág. 617; Couch, *Cyclopedia of Insurance Law*, Suplemento de 1955, vol. 5, sec. 1175c-1, pág. 107; 5 Am. Jur. 805, sec. 534; ob. cit., Suplemento 1954, sec. 535-1, pág. 190; 45 C.J.S., sec. 829, pág. 901; 27 Scaevola, Código Civil, ed. 1952, pág. 185. Se reconoce asimismo una excepción a la regla general cuando la persona que usa el vehículo con permiso del comodatario original sirve un propósito de éste o lo hace para beneficio del mismo. *Cf. Norris* v. *Pacific Indemnity Co.*, supra; 160 A.L.R. 1195, 1206. Sin embargo, en el caso de autos la situación es distinta a la de aquéllos en que se han reconocido las excepciones, ya que aquí Cruz Menéndez utilizaba el automóvil para propósitos ajenos a los intereses del comodatario original y, además, en los autos no hay base para inferir que Harold Matienzo tuviera permiso implícito para prestar el automóvil a Cruz Menéndez.

La demandante insiste también en que dada la estrecha amistad existente entre Matienzo y la señora González Silva

debemos concluir que ésta sabía que aquél no tenía licencia para guiar vehículos de motor y que al prestarle ella su automóvil lo estaba autorizando implícitamente a que permitiera guiar el vehículo a otra persona con licencia para hacerlo, como por ejemplo Cruz Menéndez. La contención de la demandante carece de méritos. Mas sea ello como fuere, en los autos no hay evidencia de la cual podamos inferir que Blanca González Silva sabía que Harold Matienzo no tenía licencia para conducir automóviles, a no ser la declaración del propio Cruz Menéndez, y ésta no fué creída por el tribunal. Tanto de la declaración de Blanca González Silva como de la de Matienzo se desprende que ella no tenía conocimiento de ese hecho y que por el contrario siempre creyó que Harold sabía conducir vehículos de motor. En vista de lo anterior debemos concluir que Cruz Menéndez no estaba cubierto por la cláusula colectiva de la póliza y, por tanto, que el tribunal sentenciador no cometió error al declarar sin lugar la demanda contra la United States Fidelity and Guarantee Company.

■■ Sostiene la sociedad demandante en segundo lugar que la suma concedida como indemnización por el tribunal inferior es insuficiente y que no resulta adecuadamente reparadora, considerando los daños sufridos por la demandante. El tribunal sentenciador formuló las siguientes conclusiones de hechos en relación con los daños causados a la demandante:

" . . . . . . .

"11.—El demandante tiene 53 años de edad. Como consecuencia del accidente sufrió una fractura de la fíbula derecha. Estuvo hospitalizado desde el día 27 de febrero hasta el 12 de marzo y recibió tratamiento hasta el 7 de abril de 1951. Fué atendido en el Hospital Municipal y más tarde en la Clínica Maldonado de Hato Rey. Por instrucciones de su médico permaneció en su casa teniendo que ser ayudado para hacer sus necesidades por su hija y su señora esposa. Es Inspector de Colecturías. Devenga un sueldo de $225 y estuvo imposibilitado de trabajar por un período de tres meses. Tuvo necesidad de usar muletas por dos meses y tuvo necesidad de andar con bastón du-

rante ocho meses, en adición a una tobillera que ha tenido que usar para evitar el dolor que se le produce en la pierna.

"12.—Como consecuencia del accidente sufrió una depresión nerviosa, habiendo recibido tratamiento del Dr. Mario Tomasini, de lo cual ha recuperado.

"13.—Durante el tiempo que estuvo hospitalizado fué visitado por el demandado Vicente Cruz Menéndez y el codemandado Vicente Cruz Morell. Incurrió en gastos por concepto de medicinas montantes a la suma de cien dólares.

" . . . . . . ."

Nuestra jurisprudencia se pronuncia en el sentido de que en casos de daños y perjuicios la fijación del monto de la indemnización descansa enteramente en la sana discreción de la corte sentenciadora y de que con tal discreción no intervendremos a no ser que la cuantía concedida resulte irrazonable. *Rodríguez* v. *American Railroad Co.*, 43 D.P.R. 493; *Baralt* v. *Báez*, ante pág. 123 (1955).

Considerada la evidencia aducida en este caso, y en particular las conclusiones de hechos del tribunal a quo que hemos copiado más arriba, nuestro criterio es que el tribunal sentenciador no erró al fijar la cuantía de la indemnización. Concluímos, por tanto, que no debemos modificar el monto de la indemnización concedida.

### Errores Señalados por los Demandados

Los cinco primeros de ellos son al efecto de que el tribunal inferior erró al resolver (1) que Vicente Cruz Morell es responsable por los daños causados por su hijo Vicente Cruz Menéndez; (2) que éste vivía en compañía de ellos, en el sentido jurídico que contempla (sic) el art. 1803 del Código Civil de Puerto Rico; (3) que el hecho en sí de que una persona menor de edad conduzca un vehículo implica la probabilidad de que sus padres no hayan cumplido debidamente con sus deberes de vigilancia y educación; (4) que Vicente Cruz Morell no cumplió con sus deberes de vigilancia y educación; que había una probabilidad de un ambiente defectuoso en el hogar; que éste más bien fué la causa próxima del accidente; y

(5) que no se probó la diligencia de los padres, y por lo tanto, que la presunción *juris tantum* de culpabilidad de los padres, establecida por el art. 1803 del Códgo Civil, no ha sido destruída.

El apelante Cruz Morell sostiene, en síntesis, que el tribunal sentenciador cometió error al resolver que él es responsable por los daños causados por su hijo. Se basa en que su hijo no vivía en su compañía al momento del accidente, tal como lo exige el art. 1803 del Código Civil, por lo cual entiende que dicho artículo no es aplicable al caso de autos. También insiste en que aún en el supuesto de que ese artículo sea aplicable, la presunción de culpa que el mismo establece, quedó destruída por la prueba.

La responsabilidad de los padres por los actos dañosos o culposos de sus hijos surgen de los arts. 1802 y 1803 del Código Civil, que en su parte pertinente disponen lo siguiente:

"Artículo 1802.—El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligada a reparar el daño causado.

"Artículo 1803.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

"El padre, y por muerte o incapacidad de éste, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.

". . . . . . .
". . . . . . ."

La jurisprudencia ha reconocido que la responsabilidad de los padres que surge del art. 1803, se basa en la culpa y negligencia de los propios padres y no en la de los hijos. Es una de carácter primario y no secundario. *Cruz v. Rivera*, 73 D.P.R. 682; Manresa, Comentarios al Código Civil Español, Tomo 12, ed. 1951, pág. 665; Colombo, Culpa Aquiliana, pág. 322. Conforme dijimos en *Cruz v. Rivera*, supra, a la pag. 686: "Esa culpa o negligencia de los padres guarda relación con su deber de ejercer vigilancia sobre los hijos me-

nores de edad que vivan en su compañía, de imponer la debida disciplina sobre sus hijos y de suministrarles una educación y un ambiente adecuado . . ." Véanse también *Nadal* v. *Miranda*, 27 D.P.R. 323, 328; *Portalatín* v. *Noriega*, 33 D.P.R. 790; *Méndez* v. *Casellas*, 47 D.P.R. 540; *Soto* v. *Corte*, 52 D.P.R. 474, 477.

El art. 1803, supra, establece una presunción *juris tantum* de culpa en los casos previstos contra las personas en él enumeradas. Véase Manresa, ob. cit., tomo 12, pág. 664, ed. 1951. De manera que cuando se exige responsabilidad al padre o a cualquiera de las personas indicadas en el art. 1803, no es necesario probar la culpa o negligencia de éstos. Son ellos los que tienen que probar que no incurrieron en culpa o negligencia para así eximirse de responsabilidad. A este respecto el ilustre civilista José Castán Tobeñas en su obra sobre Derecho Civil Español, Común y Foral, tomo 4, séptima ed., 1952, se expresa así a la pág. 791:

"Claro está, como dice Puig Peña, que este carácter taxativo de las prescripciones del art. 1,903 (art. 1803 del Código Civil nuestro) no obsta para que a personas no mencionadas *nominatim* en el mismo se les pueda declarar responsables 'a virtud de la fórmula general del art. 1,902. Ahora bien, existe una singular diferencia. Cuando a personas no declaradas responsables por el legislador se intenta responsabilizar a título de haber incurrido en culpa *in vigilando* o *in eligendo* es absolutamente necesario probar esta culpa; en cambio, en estas responsabilidades por hechos ajenos consignadas *nominatim* por el legislador hay una *presunción de culpa* en contra del responsable; luego tendrá que cargar con la prueba, demostrando que empleó toda la diligencia de un buen padre de familia para prevenir el evento (art. 1,903, párrafo último) si quiere verse libre de la acusación. *Al marido, por ejemplo, habrá que demostrarle que incurrió en culpa respecto de los actos dañosos que realizó su mujer, pues no está específicamente responsabilizado por la ley.* En cambio, el padre tiene en contra suya una presunción de culpa *in vigilando* por los actos dañosos que realiza su hijo, y el damnificado no tiene nada que probar, sino alegar simplemente el daño y la relación de parentesco. Es al padre a quien

compete demostrar que empleó toda la diligencia debida si quiere verse libre de la responsabilidad.' (*Tratado,* t. IV, vol. 2, pág. 577)." (Bastardillas nuestras.)

En el caso de autos, la evidencia establece claramente que Vicente Cruz Menéndez, hijo del apelante Cruz Morell, era menor de edad al momento de ocurrir el accidente que dió origen a este pleito.[5] Sin embargo, debemos determinar si se dió cumplimiento al otro requisito exigido por el art. 1803, o sea, si dicho menor vivía en compañía de su padre al tiempo de ocurrir el accidente. En *Rodríguez* v. *Santos,* 40 D.P.R. 48, 52, dijimos que lo que exige el art. 1803 es que el hijo esté al alcance de la autoridad del padre para reprimir y de su consejo para dirigir. Aquí la evidencia demuestra que Cruz Menéndez vivía en la casa de su padre Cruz Morell y que las relaciones entre ambos eran buenas, cosa que ellos admiten. De ahí se desprende que el menor estaba al alcance de la autoridad paterna y que vivía en compañía de su padre, según lo exige el referido artículo. Es cierto que, según alegan los demandados, la evidencia también demuestra que el menor era empleado de la sucursal de Arecibo del National City Bank con sueldo de $90 al tiempo de ocurrir el accidente; y que el menor pagaba con dicho sueldo sus gastos personales y contribuía voluntariamente con $20 ó $25 al mes para los gastos de la casa. No obstante, los anteriores hechos no alteran en forma alguna la situación. *Cf.* Giorgi, Teoría de las Obligaciones, vol. 5, pág. 397. Debemos concluir que el art. 1803 es de aplicación al caso de autos y que no se cometió el segundo error señalado por los demandados.

Pasemos entonces a considerar la contención de que la presunción que surgió del art. 1803 fué rebatida por la prueba. La prueba creída por el tribunal a quo tendió más bien a establecer afirmativamente que Cruz Morell incurrió en falta de vigilancia (*culpa in vigilando*) y que no le impuso la debida

---

[5] Vicente Cruz Menéndez tenía 20 años de edad para la fecha en que ocurrió el accidente. En Puerto Rico son menores de edad los que no han cumplido los 21 años. Art. 247 del Código Civil, ed. 1930.

disciplina a su hijo. La propia declaración de Cruz Morell establece que su hijo Vicente Cruz Menéndez a menudo no iba a comer a su casa o llegaba tarde a ella, salía a fiestas frecuentemente y como consecuencia de éstas a veces pasaba varias noches fuera de la casa y tenía su ropa en varios sitios: en su casa, en San Juan y en los hoteles de Arecibo. Sin embargo, Cruz Morell, según se desprende de su propia declaración, aceptaba como buena la conducta de su hijo y no le reprendía o aconsejaba para que adoptara un modo de vida más disciplinado. Esto claramente significa que no cumplía fielmente con los deberes que le imponía la patria potestad. En vista de lo anterior concluímos que el tribunal a quo no erró al determinar que no se rebatió la presunción de culpa establecida por el art. 1803 y, por tanto, que tampoco cometió error al resolver que Vicente Cruz Morell es responsable por los daños causados por su hijo.

En cuanto a los errores tercero y cuarto creemos innecesario discutirlos específicamente, toda vez que los mismos suscitan supuestos errores que ya han sido discutidos, o cuya comisión en forma alguna daría lugar a la revocación de la sentencia.

Los errores sexto, séptimo y noveno son al efecto de que el tribunal inferior erró al resolver (6) que Blanca González Silva no había prestado el automóvil a Vicente Cruz Menéndez junto con Harold Matienzo; (7) que ella no era responsable de los daños causados por el accidente; y (9) que la codemandada United States Fidelity and Guarantee Company no era responsable, bajo la póliza librada, de los daños causados por el automóvil de Blanca González Silva. Estos supuestos errores ya han sido discutidos en relación con el primer señalamiento de la demandante. En vista de ello es innecesario discutirlos de nuevo.

Los tres errores restantes señalados por los demandados imputan al tribunal a quo haber errado (8) al dictar sentencia contraria a derecho y a la prueba presentada; (10) al resolver que Federico Cabrera Viera no fué el único cul-

pable del accidente y que no fué su negligencia la causa próxima del accidente y (11) que no hubo negligencia contribuyente de parte de Cabrera Viera.

Estos errores van dirigidos especialmente a atacar la apreciación que de la prueba hizo el tribunal inferior. A nuestro juicio carecen de méritos. Dicho tribunal llegó a las siguientes conclusiones de hechos sobre la forma en que ocurrió el accidente:

" . . . . . .

"7.—Cuando Vicente Cruz Menéndez regresaba de ver a su novia, y al llegar a una parada de guagua en la Avenida Borinquen, arrolló al demandante Federico Cabrera Viera. Federico Cabrera Viera estaba parado frente a la Farmacia Hita, en el lado sur de dicha calle, o sea, a mano derecha en dirección de San Juan a Río Piedras. Cruzó la calle y, cuando ya había puesto el pie izquierdo en la acera Norte, fué arrollado por el vehículo conducido por el codemandado Vicente Cruz Menéndez.

"8.—La calle en ese sitio es amplia, y entre el sitio donde estaba el demandante y el extremo sur de la calle, había suficiente espacio para que pasara sin necesidad de lesionar al demandante, toda vez que no había en ese momento vehículo que lo obstaculizara.

"9.—El demandado no tocó bocina ni aparato de alarma alguno.

"10.—Al recibir el impacto, el demandante cayó a una distancia como de 15 pies del sitio donde recibió el golpe. Después de haber caído el demandante con el impacto, el automóvil conducido por el demandado caminó una distancia como de 40 pies y entonces se detuvo. En el mismo carro lo condujeron al hospital.

" .. . . . . . ."

Las anteriores conclusiones están ampliamente sostenidas por las declaraciones de Federico Cabrera Viera, Fernando López y Telesforo Colón Fuentes. Así lo demuestra la cuidadosa lectura que hemos hecho de los autos. Y de ellos se infiere que el accidente se debió exclusivamente a la forma descuidada y negligente en que el menor Cruz Menéndez conducía el automóvil. El hecho de que las declaraciones de los tes-

tigos mencionados estén en conflicto con lo declarado por Cruz Menéndez, no es motivo para revocar la sentencia apelada. El tribunal inferior tenía amplia discreción para dirimir cualquier conflicto en la prueba y así lo hizo y no se nos ha convencido de que al dirimir el conflicto dicho tribunal incurrió en manifiesto error, o actuó movido por pasión, prejuicio o parcialidad. Es nuestro deber, por tanto, respetar esa apreciación de la prueba. *García* v. *Meléndez*, 74 D.P.R. 191; *Zalduondo* v. *Méndez*, 74 D.P.R. 637; *Cintrón* v. *A. Roig Sucrs.*, 74 D.P.R. 1028; *Palmer* v. *Barreras*, 73 D.P.R. 278; *Figueroa* v. *Picó*, 69 D.P.R. 401. *Cf. Pedraza* v. *González*, 66 D.P.R. 757; *Planellas* v. *Sucn. Planellas*, 59 D.P.R. 372; *Navarro* v. *Cía. Azucarera*, 53 D.P.R. 726. En su consecuencia, llegamos a la conclusión de que tampoco se cometieron estos tres últimos errores señalados.

*La sentencia apelada será confirmada.*